IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BRAND DESIGN COMPANY, INC. d/b/a HOUSE INDUSTRIES,<br><br>*Plaintiff,*<br><br>v.<br><br>RITE AID CORPORATION; NAME RITE, LLC; SWAY CREATIVE LABS, LLC; GA COMMUNICATIONS, INC. d/b/a PURERED CREATIVE, LLC; and BURNS GROUP NYC, LLC,<br><br>*Defendants*. | Civil Action No. 22-1174 |

## SWAY CREATIVE LABS, LLC'S MOTION TO DISMISS

Defendant Sway Creative Labs, LLC ("Sway"), by counsel, hereby moves to dismiss the Complaint filed by Plaintiff Brand Design Company, Inc. d/b/a House Industries ("House" or "Plaintiff") in its entirety against Sway, with prejudice, because Sway is not subject to personal jurisdiction in this forum under Federal Rule of Civil Procedure 12(b)(2) and for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). As explained more fully in the accompanying Memorandum of Law, Plaintiff has failed to set forth any factual basis to subject Sway to either general or specific personal jurisdiction in Pennsylvania. Moreover, Plaintiff's claims against Sway for unjust enrichment are preempted by the Copyright Act and should be dismissed with prejudice. Pursuant to Local Rule of Civil Procedure 7.1(f), Sway hereby respectfully requests oral argument on this Motion.

Wherefore, Sway respectfully requests that its motion be granted and Plaintiff's Complaint be dismissed in its entirety against Sway, with prejudice.

|  |  | **WHITE AND WILLIAMS LLP** |
|---|---|---|
| Dated: May 26, 2022 | BY: | */s/ Morgan S. Birch* |

                                                          Thomas B. Fiddler
                                                          Morgan S. Birch
                                                          PA Atty ID: 59123; 319358
                                                          1650 Market Street
                                                          One Liberty Place, Suite 1800
                                                          Philadelphia, PA 19103
                                                          Tel: (215) 864-7000
                                                          *fiddlert@whiteandwilliams.com*
                                                          *birchm@whiteandwilliams.com*

                                                          *Pro Hac Vice Admission Forthcoming*
                                                          Alexandra M. Gabriel
                                                          William R. Poynter
                                                          VA Atty ID: 89185; 48672
                                                          KALEO LEGAL
                                                          4456 Corporation Lane, Suite 135
                                                          Virginia Beach, VA 23462
                                                          Tel: (757) 238-6383
                                                          Fax: (757) 304-6175
                                                          *agabriel@kaleolegal.com*
                                                          *wpoynter@kaleolegal.com*

                                                          *Attorneys for Defendant Sway Creative Labs, LLC*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BRAND DESIGN COMPANY, INC. d/b/a HOUSE INDUSTRIES, <br><br> *Plaintiff,* <br><br> v. <br><br> RITE AID CORPORATION; NAME RITE, LLC; SWAY CREATIVE LABS, LLC; GA COMMUNICATIONS, INC. d/b/a PURERED CREATIVE, LLC; and BURNS GROUP NYC, LLC, <br><br> *Defendants*. | Civil Action No. 22-1174 |

## SWAY CREATIVE LABS, LLC'S
## <u>MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS</u>

Defendant Sway Creative Labs, LLC ("Sway") by counsel, hereby files its Memorandum of Law in Support of its Motion to Dismiss Plaintiff Brand Design Company, Inc. d/b/a House Industries' ("House" or "Plaintiff") Complaint in its entirety against Sway, with prejudice, because Sway is not subject to personal jurisdiction in this forum under Federal Rule of Civil Procedure 12(b)(2) and for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

## I. INTRODUCTION

House Industries filed its Complaint against five defendants, Rite Aid Corporation ("Rite Aid"), Name Rite, LLC ("Name Rite"), Sway, GA Communications, Inc. d/b/a PureRED Creative, LLC ("PureRED"), and Burns Group NYC, LLC ("Burns Group" and, collectively, "Defendants"), alleging breach of contract, unfair competition, unjust enrichment, and violations of the Lanham Act, 15 U.S.C. 1051 *et seq.*, including false designation of origin and fraudulent registration. These claims all arise out of House's allegation that it owns the proprietary font Neutraface and Rite Aid's

recent rebranding, which included a new logo incorporating the Neutraface font, below (the "New Rite Aid Logo"). (Compl. ¶ 2).



House alleges that Rite Aid's use of the Neutraface font for the words "RITE AID" in the above-depicted New Rite Aid Logo was unauthorized and in violation of House's licensing agreement. Sway, PureRED, and Burns Group are alleged to be "creative and advertising agencies" of Rite Aid who similarly used the Neutraface font either without authorization or in violation of House's licensing agreement. (Compl. ¶ 6). The remaining defendant, Name Rite, is a wholly-owned subsidiary of Rite Aid. (Compl. ¶ 5).

The sole count of the Complaint alleged against Sway is Count II: Unjust Enrichment under Pennsylvania common law.

## II.  ARGUMENT

### A. The Complaint Should Be Dismissed Under FRCP 12(b)(2).

#### i. Standard of Review

When a defendant files a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2), the plaintiff must prove by a preponderance of the evidence that the defendant is subject to personal jurisdiction in the forum. *Cerciello v. Canale*, 563 F. App'x. 924, 925 n.1 (3d Cir. 2014) (Unpublished) (citing *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 146 (3d. Cir. 1992)). While a court must accept factual allegations in the Complaint as true and resolve disputes of facts in the plaintiff's favor when deciding a Rule 12(b) motion, the plaintiff cannot rely on the pleadings alone to establish jurisdiction. *Carteret Sav. Bank, FA*, 954 F.2d at 142 n.1; *Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 66 n.9 (3d Cir. 1984). Rather, the plaintiff must provide proof

of the Court's jurisdiction over the defendant. *Carteret Sav. Bank, FA*, 954 F.2d at 142 n.1; *Time Share Vacation Club*, 735 F.2d at 66 n.9. Such jurisdictional facts must be established "through sworn affidavits or other competent evidence."[1] *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 101 n.6 (3d Cir. 2004). Once the plaintiff has shown minimum contacts, the burden shifts to the defendant, who must show that the assertion of jurisdiction would be unreasonable. *Mellon Bank (East) PSFS, Nat. Ass'n v. Farino*, 960 F.2d 1217, 1226 (3d Cir. 1992).

### ii. Sway is not subject to personal jurisdiction in Pennsylvania.

Judicial power may be exercised over a defendant only when the defendant "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *See, e.g.*, *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). There are two types of personal jurisdiction: general and specific. As explained by the Supreme Court of the United States:

> A court may assert general jurisdiction over foreign (sister-state or foreign country) corporations to hear any and all claims against them when their affiliations with the State are so continuous and systematic as to render them essentially at home in the forum state. Specific jurisdiction, on the other hand, depends on an affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.

*Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (internal citations omitted). Because Pennsylvania's long-arm statute authorizes personal jurisdiction over non-residents to the "fullest extent allowed under the Constitution of the United States" (*Farber v. Tennant Truck Lines, Inc.*, 84 F. Supp. 3d 421, 426 (E.D. Pa. 2015) (citing 42 Pa. Cons. Stat. § 5322(b))), the statutory inquiry merges with the Due Process inquiry.

---

[1] Mr. Bryce Picard's, one of the owners of Sway Creative Labs, LLC, May 26, 2022 declaration is attached hereto as **Exhibit A.**

1. **General Jurisdiction**

General jurisdiction is satisfied if a corporation is incorporated or has a principal place of business within the state. *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 880 (2011). Additionally, there may be general jurisdiction over a corporation where its "affiliations with the State are so continuous and systematic as to render it essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014) (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)) (internal quotations omitted). A party may also explicitly consent to the jurisdiction of a State's courts. *Nicastro*, 564 U.S. at 880.

Sway Creative Labs, LLC is a Virginia limited liability company and its principal place of business is in Norfolk, Virginia. Sway does not now, nor did it at the time of the filing of this Complaint, maintain an office or ongoing operations in Pennsylvania. Sway does not direct paid advertising or marketing of its business into Pennsylvania. While Sway maintains a website that is accessible throughout the country, the website is a passive one that provides information and, at most, permits an individual to submit a contact form. Sway's website, which launched in 2020, does not allow a prospective customer to make a purchase, engage services, create an account, sign up for a list-serv, or otherwise reflect "specifically intended interaction with residents of the forum state." *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 452 (3d Cir. 2003) (citing *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa.1997) (explaining that the defendant in *Zippo* "repeatedly and consciously chose to process Pennsylvania residents' applications and to assign them passwords" through its website "knowing that the contacts would result in business relationships with Pennsylvania customers"). Sway's website is not specifically directed toward Pennsylvania or Pennsylvania-based individuals or entities. *Nationwide Contractor Audit Serv., Inc. v. Nat'l Compliance Mgmt. Servs., Inc.*, 622 F. Supp. 2d 276, 290 (W.D. Pa. 2008).

Since its inception in 2012, Sway has had only two Pennsylvania-based customers: Rite Aid (and/or subsidiaries or affiliate companies of Rite Aid) and another customer for which it has not performed services since at least 2018. Similarly, Sway has had only one employee who happened to live in Pennsylvania and worked remotely. Neither of these are sufficient to confer general personal jurisdiction over Sway such that it is "at home" in Pennsylvania. *See Farber v. Tennant Truck Lines, Inc.*, 84 F. Supp. 3d 421, 432 (E.D. Pa. 2015) (finding that workers employed in Pennsylvania, the mileage workers drove in Pennsylvania, and revenue workers generate from pick-ups and drop-offs in Pennsylvania were not sufficient to confer jurisdiction in Pennsylvania).[2]

Finally, Sway does not have contracts containing forum selection clauses or venue clauses with the Plaintiff or with any Defendant in this matter that would subject it to the jurisdiction of Pennsylvania courts by consent. As such, Sway is not subject to general personal jurisdiction in Pennsylvania.

### 2. Specific Jurisdiction

Federal due process for personal jurisdiction requires that a defendant have minimum contacts with the forum state such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945); *Marten v. Godwin*, 499 F.3d 290, 296 (3d Cir. 2007). In specific jurisdiction cases, a court must decide whether a defendant has purposefully established minimum contacts within the forum State and consider whether, by

---

[2] *See also Listug v. Molina Info Sys.*, LLC, 2014 WL 3887939, at *3 (D. Minn. Aug. 8, 2014) ("An agent's decision to work from home in the forum state generally does not bind an entity to personal jurisdiction in that state where the purpose of the arrangement is merely for the agent's personal convenience…."); *Bertolini-Mier v. Upper Valley Neurology, P.C.*, 2017 WL 4081901, at *5 (D. Vt. Sept. 13, 2017) (explaining that employer's "knowledge and facilitation of occasional remote work" was an "accommodation," not a "purposeful effort" to have work performed in the forum).

5

traditional standards, those contacts would make personal jurisdiction reasonable and fair under the circumstances. *Kulko v. California Superior Court*, 436 U.S. 84, 92 (1978); *Goodway Grp. v. Sklerov*, 2018 U.S. Dist. LEXIS 137599 at *8 (E.D. Pa. 2018). Crucial to the minimum contacts analysis is a showing that the defendant should reasonably anticipate being haled into court in the forum state by purposely availing itself of the privileges of doing business in the forum state. *Hanson v. Denckla*, 357 U.S. 235, 253 (1958); *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

The minimum contacts analysis focuses on "the relationship among the defendant, the forum, and the litigation," such that the defendant has fair warning that it may be subject to suit in that forum. *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977); *Marten*, 499 F.3d at 296. "It is the defendant's actions, not his expectations, that empower a State's courts to subject him to judgment." *Nicastro*, 564 U.S. at 883. Moreover, there "must be an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State. Where there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1781 (U.S. 2017) (internal citations omitted). The relationship with the forum must arise out of the contacts a defendant himself creates, not a plaintiff's contact with the forum. *Walden v. Fiore*, 571 U.S. 277, 283–86 (2014). Furthermore, the minimum contacts must be with the forum itself, not persons who reside there. *Id.* at 285.

Sway did not have minimum contacts with Pennsylvania with respect to this dispute. Sway was introduced to Rite Aid as a potential vendor for Rite Aid's rebranding via a Rite Aid employee based in Virginia – Sway did not reach into Pennsylvania to pitch Rite Aid for its services. Sway did not travel to Pennsylvania as part of its engagement by Rite Aid. Sway did not execute a

6

written master services agreement with Rite Aid for the rebranding work, nor did any invoice or statement of work between Sway and Rite Aid related to the Rite Aid rebranding at issue in the Complaint subject Sway to a Pennsylvania choice of law provision or forum selection clause. Sway performed all of the work for Rite Aid in Virginia, and the vast majority of the communication regarding the rebranding project with Sway was through a third-party consulting company based in New York, not Rite Aid representatives in Pennsylvania.

That another defendant in this matter, Rite Aid, happens to be based in Pennsylvania or that alleged actions of Rite Aid that are the subject of House's Complaint may have occurred in Pennsylvania is not only insufficient to subject Sway to personal jurisdiction in Pennsylvania, it is irrelevant to whether *Sway's* actions subject it to personal jurisdiction in this Court. *Walden*, 571 U.S. at 283–86 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985)) ("If the question is whether an individual's contract with an out-of-state party alone can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot."). Simply put, they do not.

The sole count against Sway in the Complaint is for unjust enrichment, and House alleges that Sway "us[ed] Neutraface to create a logo" and did so "without obtaining and paying for a license from House…." (Compl. ¶ 110). Even taking the allegations in the Complaint as true for purposes of this Motion, the sole alleged action that purportedly subjects Sway to liability for unjust enrichment is "using Neutraface." (*Id.*). Because any and all work performed by Sway for Rite Aid occurred in Virginia, "using" the Neutraface font cannot and does not subject Sway to jurisdiction in Pennsylvania.

Given that Sway is not subject to either general or specific personal jurisdiction in Pennsylvania, Sway respectfully requests that the Complaint be dismissed in its entirety against

Sway.

### B. The Complaint Should Be Dismissed Under FRCP 12(b)(6) For Failure to State A Claim.

#### i. Standard of Review

Under Federal Rule of Civil Procedure, Rule 12(b)(6), a party may move to dismiss the complaint for "failure to state a claim on which relief can be granted." To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual allegations to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 550 (2007). In reviewing a motion to dismiss, the Court must accept as true all of the factual allegations, but not the legal conclusions contained in the Complaint. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009).

Factual allegations that constitute nothing more than "legal conclusions" or "naked assertions" need not be credited. *Twombly*, 550 U.S. at 555, 557. "Such allegations are 'not entitled to the assumption of truth' and must be disregarded for purposes of resolving a 12(b)(6) motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 679–80 (2009). In reviewing the plaintiff's allegations, the court need not accept "unsupported conclusions and unwarranted inferences," and "legal conclusions made in the guise of factual allegations…are given no presumption of truthfulness." *Wyeth v. Ranbaxy Labs., Ltd.*, 448 F.Supp.2d 607, 609 (D.N.J. 2006). "The plaintiff must demonstrate there is more than just a mere possibility of an entitlement to relief; he must allege facts plausibly suggesting his injury was due to (and most logically explained by) the defendant's misconduct." *Adams v. Lafayette College*, No. CIV.A. 09-3008, 2009 WL 2777312, at * 2 (E.D. Pa. 2009).

### ii. House Industries Fails to State a Claim for Unjust Enrichment Against Sway because the Claim is Preempted by the Copyright Act.[3]

#### 1. Preemption applies to non-copyrightable elements.

Congress explicitly provided in the Copyright Act of 1976 that federal copyright law would preempt all equivalent state rights within the scope of the federal copyright law. The Copyright Act provides that:

> all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103…are governed exclusively by this title. [N]o person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.

17 U.S.C. § 301. While the preemption prevision does not apply if the subject matter is *not* within the subject matter of copyright as specified by the Copyright Act (*Dun & Bradstreet Software Servs., Inc. v. Grace Consulting, Inc.*, 307 F.3d 197, 216–17 (3d Cir.2002) (citation and internal quotations omitted)), preemption still reaches unoriginal works or works that are not otherwise copyrightable or protectible. For example, the Judiciary Committee reports state that "[a]s long as a work fits within one of the general subject matter categories of sections 102 and 103, the bill prevents the States from protecting it even if it fails to achieve Federal statutory copyright because it is too minimal or lacking in originality, or because it has fallen into the public domain." H.R. Rep. No. 1476, 94th Cong., 2d Sess. 131 (1976); S. Rep. No. 473, 94th Cong., 1st Sess. 114 (1975).

Courts interpret the scope of copyright preemption broadly because Congress "created a regime in which some types of works are copyrightable and others fall into the public domain." *Forest Park Pictures v. Universal Television Network, Inc.*, 683 F.3d 424, 430 (2d Cir. 2012)

---

[3] Sway joins in the Motions to Dismiss filed by Rite Aid Corporation, PureRED, and Burns Group solely with respect to the assertion that House's claim for unjust enrichment set forth in Count II of the Complaint is preempted by the Copyright Act.

(citing *Nat'l Basketball Ass'n v. Motorola, Inc.*, 105 F.3d 841, 849 (2d Cir. 1997). To permit states to vest "exclusive rights in material that Congress intended to be in the public domain" would "run directly afoul of one of the Act's central purposes." *Id.* (citing *Harper & Row, Publishers, Inc. v. Nation Enters.*, 723 F.2d 195, 200 (2d Cir. 1983), *rev'd on other grounds*, 471 U.S. 539 (1985)). That the scope of preemption is not limited only to those elements protected and registrable under the Copyright Act has been recognized by courts within this District. *See, e.g.*, *Info. Handling Servs., Inc. v. LRP Publications, Inc.*, No. CIV. A. 00-1859, 2000 WL 433998, at *2 (E.D. Pa. Apr. 18, 2000); *Pellegrino v. Epic Games, Inc.*, 451 F. Supp. 3d 373, 387 (E.D. Pa. 2020).

Typefaces fall within the "subject matter" of the Copyright Act, that is, they could be considered either "pictoral" or "graphic" works, as such works specifically include "two-dimensional works of fine, graphic, and applied art," or "literary works" as they comprise of "words, numbers, or other verbal or numerical symbols or indicia. *See* 17 U.S.C. § 102(a). However, 37 CFR § 202.1(e) provides that "typeface as typeface" is an example of a work not subject to copyright and for which applications for registration cannot be entertained.[4] It would defeat the purpose of the Copyright Act's preemption provisions, and the express exclusion of typefaces from registration as copyrightable works, to permit state law claims to run afoul of the federal copyright regime. As such, the Neutraface font falls within the subject matter of copyright protection under federal law, and the Act's preemption doctrine applies.

---

[4] The same result applies with respect to preemption even if House alleges unauthorized use of the proprietary font *software* for Neutraface, as opposed to the form of the typeface itself, as software also falls within the subject matter of the Copyright Act. *Dun & Bradstreet Software Servs., Inc. v. Grace Consulting, Inc.*, 307 F.3d 197, 206 (3d Cir. 2002) ("Congress amended the Act in 1980 expressly to extend copyright protection to computer programs and derivatives. 17 U.S.C. §§ 101 *et seq.*").

### 2. Preemption applies to an unjust enrichment claim under Pennsylvania common law.

The test in the Third Circuit for whether a state law claim is preempted by the copyright act is a "functional test" that determines whether the claim is equivalent by looking at the elements required by the claim. *Dun & Bradstreet Software Servs., Inc. v. Grace Consulting, Inc.*, 307 F.3d 197, 206 (3d Cir. 2002) (citing *Data General Corp. v. Grumman Systems Support Corp.*, 36 F.3d 1147, 1164 (1st Cir. 1994)). If the state cause of action "requires an extra element beyond mere copying, preparation of derivative works, performance, distribution, or display, then the state cause of action is qualitatively different from, and not subsumed within, a copyright infringement claim and federal law will not preempt the state action." *Id.* However, not every extra element will qualify – the element must establish a "qualitative variance" between rights protected by federal copyright law and state law. *Id.* For example, proof of breach of a duty of trust or confidence, as would be required for certain state law misappropriation of trade secrets claims, is qualitatively different from and not an element of a claim for copyright infringement. *Id.*

The elements of a claim for copyright infringement are: "(1) ownership of a valid copyright and (2) unauthorized copying of original elements of the plaintiff's work." *Dun & Bradstreet Software Servs., Inc. v. Grace Consulting, Inc.*, 307 F.3d 197, 206 (3d Cir. 2002). Unjust enrichment claims require the following elements: "(1) benefits conferred on one party by another; (2) appreciation of such benefits by the recipient; and (3) acceptance and retention of these benefits in such circumstances that it would be inequitable for the recipient to retain the benefits without payment of value." *Liberty Mut. Ins. Co. v. Gemma*, 301 F. Supp. 3d 523, 541 (W.D. Pa. 2018). Courts in this District have repeatedly held that unjust enrichment claims under Pennsylvania law are preempted by the Copyright Act. *See Tech. Based Sols., Inc. v. Elecs. Coll. Inc.*, 168 F. Supp. 2d 375, 380 (E.D. Pa. 2001); *Curtin v. Star Ed. Inc.*, 2 F. Supp. 2d 670, 675 (E.D. Pa. 1998); *Syngy,*

*Inc. v. ZS Assocs., Inc.*, No. CIV.A. 07-3536, 2015 WL 899408, at *38–40 (E.D. Pa. Mar. 3, 2015); *Quadratic, Inc. v. Turn 5, Inc.*, 2015 WL 4876314, at *13 (E.D. Pa. Aug. 13, 2015); *Raucci v. Candy & Toy Factory*, 145 F. Supp. 3d 440, 453 (E.D. Pa. 2015); *Chant Eng'g Co. v. Cumberland Sales Co.*, No. CV 20-4559, 2020 WL 12630540, at *1 (E.D. Pa. Dec. 17, 2020).

House's unjust enrichment claim is predicated solely off of Sway's alleged use of a "proprietary font owned by House []named 'Neutraface….'" (Compl. ¶¶ 2, 110). The "benefit" allegedly conferred by House on to Sway is the use of Neutraface. As such, this claim has no additional elements than those also required for claims of copyright infringement. *Quadratec, Inc. v. Turn 5, Inc.*, No. CIV.A. 13-6384, 2015 WL 4876314, at *13 (E.D. Pa. Aug. 13, 2015) (citing *CollegeSource, Inc. v. Academyone, Inc.*, No. 10–3542, 2012 U.S. Dist. LEXIS 153197, at *38 (E.D. Pa. Oct. 25, 2012)) (rejecting plaintiff's contention that an unjust enrichment claim is qualitatively different than a copyright infringement claim just because the defendant "may have received a financial benefit").

Accordingly, Count II: Unjust Enrichment against Sway is preempted by the Copyright Act and must be dismissed with prejudice.

## III. CONCLUSION

Sway Creative Labs, LLC respectfully requests that this Court grant its Motion to Dismiss for the reasons set forth herein.

|  |  | **WHITE AND WILLIAMS LLP** |
|---|---|---|
| Dated: May 26, 2022 | BY: | */s/ Morgan S. Birch* |

                                                    Thomas B. Fiddler
                                                    Morgan S. Birch
                                                    PA Atty ID: 59123; 319358
                                                    1650 Market Street
                                                    One Liberty Place, Suite 1800
                                                    Philadelphia, PA 19103
                                                    Tel: (215) 864-7000
                                                    *fiddlert@whiteandwilliams.com*
                                                    *birchm@whiteandwilliams.com*

                                                    *Pro Hac Vice Admission Forthcoming*
                                                    Alexandra M. Gabriel
                                                    William R. Poynter
                                                    VA Atty ID: 89185; 48672
                                                    KALEO LEGAL
                                                    4456 Corporation Lane, Suite 135
                                                    Virginia Beach, VA 23462
                                                    Tel: (757) 238-6383
                                                    Fax: (757) 304-6175
                                                    *agabriel@kaleolegal.com*
                                                    *wpoynter@kaleolegal.com*

                                                    *Attorneys for Defendant Sway Creative Labs, LLC*

# EXHIBIT A

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BRAND DESIGN COMPANY, INC. d/b/a HOUSE INDUSTRIES,<br><br>*Plaintiff,*<br><br>v.<br><br>RITE AID CORPORATION; NAME RITE, LLC; SWAY CREATIVE LABS, LLC; GA COMMUNICATIONS, INC. d/b/a PURERED CREATIVE, LLC; and BURNS GROUP NYC, LLC,<br><br>*Defendants*. | Civil Action No. 22-1174 |

## **DECLARATION OF BRYCE PICARD**

I, Bryce Picard, being over the age of eighteen, make this declaration upon personal knowledge of the following facts:

1. I am a current resident and citizen of the Commonwealth of Virginia. I am one of the owners of Sway Creative Labs, LLC ("Sway"). Sway's co-owner, Jarrett Beeler, and I founded Sway in 2012 as a Virginia limited liability company. Sway has always been a Virginia limited liability company since its founding. Sway has never had offices outside of the Commonwealth of Virginia, and the majority of Sway's clients since its founding have been Virginia-based clients.

2. Sway does not own any property, maintain any bank accounts, or pay any state or local taxes in Pennsylvania. Sway does not have any retail or office locations or leases for any property in Pennsylvania. Sway is not licensed to do business in Pennsylvania. Sway does not have any current employees working or living in Pennsylvania.

3. Sway has only ever had one employee based in Pennsylvania who worked for Sway

remotely. This employee worked for Sway from approximately July 5, 2021 through March 25, 2022 as a Digital Media Specialist. This employee did not perform any work on the Rite Aid Corporation ("Rite Aid") rebranding project at issue in the Complaint (the "Rebranding").

4. Mr. Beeler and I have only traveled to Pennsylvania on behalf of Sway once in 2015 to meet with a new client to pitch a branding and website redevelopment project. No other employees of Sway have travelled to Pennsylvania on Sway's behalf for clients since Sway was founded in 2012.

5. Sway's new website launched in June 2020: www.madebysway.com. While Sway's website has a "Contact Us" form on the website, to the best of my knowledge, Sway has never engaged a client in Pennsylvania that originated from a submission through the "Contact Us" form since the new website launched. Clients or potential clients cannot purchase goods or services through Sway's website. The website does not give clients or potential clients the ability to create an account or sign up for a listserv or other recurring mailing list.

6. Sway has never engaged in any other paid marketing or advertising for the company, with the exception of paid job postings. Sway has never paid for any marketing or advertising for the company directed specifically toward Pennsylvania.

7. The only Pennsylvania-based client Sway performed work for since at least 2018 is Rite Aid and/or its subsidiaries or related entities.

8. Approximately 97% of Sway's gross receipts to date in 2022, including pass-through media billings, came from Virginia-based clients. Approximately 92% of Sway's gross revenue to date in 2022, excluding pass-through media billings, came from Virginia-based clients.

9. Sway previously performed work for a Norfolk, Virginia-based company called ValueOptions – which employed Mr. Tom Warburton at the time. Sway met with Mr. Warburton

in Norfolk regarding the work for ValueOptions back in 2012. It is my understanding that Mr. Warburton is a resident of the Commonwealth of Virginia, lived in Virginia when Sway began performing services for ValueOptions in 2012, continued to live in Virginia after that time, and lives in Virginia to date. It is my understanding that Mr. Warburton later started working for Rite Aid and/or one of its subsidiaries or affiliate entities.

10. Sway was introduced to Rite Aid as a potential vendor for the Rebranding by Mr. Warburton, who reached out to Sway in December 2019 via email and introduced Sway to the then-current Senior Vice President and Chief Marketing and Merchandising Officer for Rite Aid.

11. All of the work performed by Sway for Rite Aid for the Rebranding was performed by Sway owners or employees in Virginia. The vast majority of the communication with Sway – including email and phone communication – regarding the Rite Aid Rebranding was conducted through a third-party consulting company based in New York. None of Sway's owners or employees traveled to Pennsylvania in the course of performing services for Rite Aid. Sway did not sign a written master services agreement with Rite Aid for the Rebranding.

I have read the foregoing declaration and declare under penalty of perjury that it is true and correct this 26th day of May, 2022.

_____
BRYCE PICARD
Owner & Creative Director

## CERTIFICATE OF SERVICE

I hereby certify that, on May 26, 2022, I electronically filed the foregoing with the Clerk of the Court for the Eastern District of Pennsylvania using the CM/ECF system that will send notification of such filing to all counsel of record.

*/s/ Morgan S. Birch*
Morgan S. Birch