**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **BRAND DESIGN COMPANY, INC. d/b/a HOUSE INDUSTRIES,**<br>　　　　　　**Plaintiff,**<br><br>**v.**<br><br>**RITE AID CORPORATION, NAME RITE, LLC, GA COMMUNICATIONS, INC., d/b/a PURERED CREATIVE, LLC, AND BURNS GROUP, NYC, LLC,**<br>　　　　　　**Defendants.** | **CIVIL ACTION**<br><br><br><br>**NO.  22-1174** |

## OPINION

Plaintiff Brand Design Company Inc. d/b/a House Industries ("House") designed a font called Neutraface, which it licenses to third parties for limited use.  House alleges that Defendant Rite Aid Corp. ("Rite Aid"), its subsidiary, Name Rite, LLC ("Name Rite"), and its advertising agencies, GA Communications, Inc. d/b/a PureRED Creative, LLC ("PureRED"), and Burns Group, NYC, LLC ("Burns Group") (collectively, "Defendants") used Neutraface for Rite Aid's recent rebranding, at first without a license, and later in violation of the licenses that Defendants eventually purchased from House.[1]  House brings suit for breach of contract and unjust enrichment against Rite Aid, PureRED, and Burns Group; for false designation of origin under 15 U.S.C. § 1125(a) and unfair competition and reverse passing off under Pennsylvania common law against Rite Aid; and for false or fraudulent registration under 15 U.S.C. § 1120 against Rite Aid and Name Rite.  Each defendant moved to dismiss all claims for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  For the reasons that follow, Burns Group's

---

[1] House also sued a third advertising agency, Sway Creative Labs, LLC, but those claims have been dismissed without prejudice pursuant to Federal Rule of Civil Procedure 12(b)(2).  *Brand Design Co. v. Rite Aid Corp.*, 2022 WL 3082996, at *2 (E.D. Pa. Aug. 3, 2022).

motion will be denied; PureRED's motion will be granted in part and denied in part; and the joint motion of Rite Aid and Name Rite will be granted in part and denied in part.

## I.   FACTUAL ALLEGATIONS

House designs hand-crafted fonts and provides custom design services creating logos and branding.  The House design team spent several years and thousands of hours developing a font design family called Neutraface.  The font's value depends on long-term licensing to numerous licensees.  To access Neutraface, would-be users must purchase a license for the software that generates it.  House offers different types of software licenses for its fonts, each imposing different restrictions on the uses to which the fonts and characters (also called "glyphs") generated by the software may be put.

No later than December 2019, Rite Aid's advertising agencies began work on a new logo (the "New Rite Aid Logo").  In March 2020, Rite Aid announced a business-wide rebranding, at a reported price tag of $700,000,000.  The rebranding uses Neutraface in the New Rite Aid Logo and on product packaging, in-store signage, store exteriors, and in broadcast and TV advertising:

**Old Logo**



**New Logo**



After the rebranding was announced, effective March 31, 2020, PureRED entered into two advertising license agreements on Rite Aid's behalf for Neutraface.  The "Print License" granted Rite Aid a 1-year license to use Neutraface for "Print/[Point-of-Sale]/Signage Advertising."  The "Digital License" granted it a 5-year license to use Neutraface for "Digital/Social Media/Web Advertising."  Each license is limited to the "grant of rights

expressly provided" therein, and House had previously informed PureRED that any use of the font in a logo would require a separate license.

Later that year, each defendant purchased at least one standard form "desktop" license from House.  PureRED purchased two in May 2020, one for itself and one for Rite Aid.  Burns Group acquired a desktop license in July 2020, and Rite Aid bought another in November 2020. Per the Complaint, each desktop license held by Defendants provides that certain "uses of the Licensed Software and Fonts and glyphs generated thereby are expressly NOT PERMITTED," including use in a "logo" and use in "[a]ny product for sale, product packaging, digital/social media/web advertising, print/POS advertising, and/or tv advertising."

According to House, Rite Aid, Burns Group, and PureRED have engaged in many prohibited uses, and have "created an association between House's font design and Rite Aid as source[,] . . . threaten[ing] to destroy the present and future licensable value of the font."  House seeks declaratory and injunctive relief, cancellation of Rite Aid's marks pursuant to 15 U.S.C. § 1119, destruction of infringing articles under 15 U.S.C. § 1118, an accounting of profits, and damages.

## II.    LEGAL STANDARDS

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  At this stage, the Court must "construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)).  Legal conclusions are disregarded and well-pleaded facts are taken as true.  *Id.* at 210-11.  All reasonable inferences are drawn in the plaintiff's favor.  *In re Asbestos Prods. Liab. Litig. (No. VI)*, 822 F.3d 125, 131 (3d Cir. 2016).

## III.   DISCUSSION

### A.  Preemption by the Copyright Act

Defendants challenge many of Plaintiff's claims on preemption grounds.  Section 102 of the Copyright Act protects "original works of authorship fixed in any tangible medium of expression," including literary, pictorial, and graphic works.  17 U.S.C. § 102(a).  Section 103 extends this protection to compilations and derivative works.  17 U.S.C. § 103(a).  Section 106 bestows on copyright owners certain exclusive rights, including to reproduce and display their works, and to create derivative works therefrom.  17 U.S.C. § 106.

Section 301 of the Copyright Act expressly preempts state law claims that create rights "equivalent" to (1) "any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship" that (2) "come within the subject matter of copyright as specified by sections 102 and 103."  *Id*. § 301(a).  The Act does *not* preempt state "rights or remedies" with respect to:

> (1) subject matter that does not come within the subject matter of copyright as specified by sections 102 and 103 . . . ; or . . . (3) activities violating legal or equitable rights that are not equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106.

*Id*. § 301(b).  "In other words, for a state-law claim to be preempted by copyright law, it must protect (1) an exclusive right in (2) a work within copyright's subject matter."  *Facenda v. N.F.L. Films, Inc.*, 542 F.3d 1007, 1026 (3d Cir. 2008).

4

###### i.  *Unjust Enrichment*

Count II of the Complaint asserts an unjust enrichment claim against Rite Aid, PureRED, and Burns Group.  The basis for the unjust enrichment claim against Rite Aid is that, "[b]y using House's proprietary font in the New Rite Aid Logo, as part of its brand identity, . . . without obtaining and paying for licenses for those uses, Rite Aid has received and has retained a benefit from House."  The unjust enrichment claims against PureRED and Burns Group rest on allegations that they "received and retained a benefit from House" by "using Neutraface to create a logo for Rite Aid and preparing materials incorporating Neutraface without obtaining and paying for a license from House."  All three defendants moved to dismiss these claims on the basis that they are preempted by the Copyright Act.

Unjust enrichment claims based on "an allegation that the defendant has secured a benefit due to the plaintiff under the Copyright Act" are "routinely" preempted.  *CollegeSource, Inc. v. AcademyOne, Inc.*, 597 F. App'x 116, 128 (3d Cir. 2015) (citing *R.W. Beck, Inc. v. E3 Consulting, LLC,* 577 F.3d 1133, 1149 (10th Cir. 2009)); *see also Video Pipeline, Inc. v. Buena Vista Home Ent., Inc.*, 210 F. Supp.2d 552, 567-68 (D.N.J. 2002) (unjust enrichment claim based on uncompensated exploitation of copyrighted works was preempted); *Raucci v. Candy & Toy Factory*, 145 F. Supp.3d 440, 453 (E.D. Pa. 2015) (same); *Chant Eng'g Co., Inc. v. Cumberland Sales Co.*, 2020 WL 12630540, at *1 n.1 (E.D. Pa. Dec. 17, 2020) (same).

But in this case, there is a plot twist: Neutraface is a typeface, and "typeface as typeface" is a "work[] not subject to copyright."  37 C.F.R. § 202.1(e).  Defendants argue—relying almost exclusively on cases outside this Circuit—that this changes nothing, because preemption extends to state law claims with respect to uncopyrightable as well as copyrightable material.

Defendants' theory is not consistent with the Third Circuit's interpretation of Section

301.  Specifically, Defendants have not taken into account prior Third Circuit decisions holding

that, if a work is not copyrightable under the Copyright Act, the preemption test laid out in

Section 301(a) is not satisfied and state law claims pertaining to that work are not preempted.

Take for example *Dun & Bradstreet Software Servs., Inc. v. Grace Consulting, Inc.*, 307

F.3d 197 (3d Cir. 2002).  In that case, the defendant provided consulting services to licensees of

plaintiff's business software.  *Id*. at 201.  The plaintiff alleged that, in the course of providing

these services, defendant had induced its customers to hand over confidential information,

including customer lists.  *Id.* at 204.  At summary judgment, the district court had dismissed

plaintiff's claim for misappropriation of trade secrets with respect to the customer lists.  *Id.* at

218.  The Court of Appeals held that this was error, because "customer lists were not

copyrightable material and, therefore, [] claims alleging a violation of state laws were not

preempted" by Section 301 of the Copyright Act.  *Id.* at 219.

The Third Circuit followed this line of thinking in *Facenda v. N.F.L. Films, Inc.*, 542

F.3d 1007 (3d Cir. 2008).  There, the estate of John Facenda, a "Philadelphia broadcasting

legend," alleged that NFL Films, Inc. had violated Pennsylvania's right of publicity statute by

using Facenda's voice in one of their TV productions.  *Id.* at 1011.  The defendant argued that

the Copyright Act preempted the right of publicity claim.  *Id.* at 1025-26.  The Third Circuit

disagreed, holding that because a person's voice is not copyrightable subject matter, the second

prong of Section 301(a) was not satisfied and plaintiff's right of publicity claim was not

preempted.  *Id.* at 1027-28.

These cases are controlling here.  House's unjust enrichment claims rest on Defendants'

use of its typeface in the New Rite Aid Logo.  Neutraface is a "work not subject to copyright,"

37 C.F.R. § 202.1(e).  Therefore, Neutraface constitutes "subject matter that does not come

within the subject matter of copyright" and the second prong of the preemption test is not

satisfied.  17 U.S.C. § 301(a)-(b).  House's claims that Rite Aid, Burns Group, and PureRED

were unjustly benefitted by its unauthorized use are not preempted.  *Dun & Bradstreet Software

Servs., Inc.*, 307 F.3d at 219.[2]

### ii.    Breach of Contract

Although House brought breach of contract claims against Rite Aid, Burns Group, and

PureRED, only PureRED moved to dismiss this claim on preemption grounds.  House's breach

of contract claim against PureRED rests on the allegation that it "continu[ed] to engage in

unauthorized uses of Neutraface, including using it in connection with the New Rite Aid Logo,"

after acquiring a desktop license.  As explained above, Neutraface is not a work subject to

copyright because it is a typeface.  37 C.F.R. § 202.1(e).  Therefore, a breach of contract claim

based on the unauthorized use of that typeface is not preempted by the Copyright Act.  *Dun &

Bradstreet Software Servs., Inc.*, 307 F.3d at 219.

### iii.    Unfair Competition

The Complaint also contains a single count for unfair competition, which is premised on

reverse passing off under Pennsylvania common law and which appears to be based on

allegations that Rite Aid is misrepresenting House's font as its own creation.  Specifically, House

alleges that Rite Aid has misrepresented "that it, not House is the source of Neutraface," through

---

[2] Burns Group cites to *Compco Corp. v. Day-Brite Lighting, Inc.*, 376 U.S. 234 (1964) for the proposition that "when an article is unprotected by a patent or a copyright, state law may not forbid others to copy that article." *Id.* at 237.  But the Supreme Court later explained that "[o]ur decisions since . . . *Compco* have made it clear the Patent and Copyright Clauses do not, by their own force or by negative implication, deprive the States of the power to adopt rules for the promotion of intellectual creation within their own jurisdictions." *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 165 (1989) (citations omitted).  The rule is that "where 'Congress determines that neither federal protection nor freedom from restraint is required by the national interest,' the States remain free to promote originality and creativity in their own domains." *Id.* (internal citation omitted).  The Third Circuit's application of Section 301 of the Lanham Act is consistent with this rule.

its use of Neutraface in the New Rite Aid Logo; representations on its website as to its ownership

of images, graphics, and logos; and Name Rite's registration of design marks.  Rite Aid also

moves to dismiss this claim on preemption grounds.

Passing off occurs when a "producer misrepresents his [or her] own goods or services as

someone else's." *Dastar Corp. v. Twentieth Century Fox Film Corp*., 539 U.S. 23, 27 n.1

(2003).  Reverse passing off occurs when "[t]he producer misrepresents someone else's goods or

services as his [or her] own." *Id*.  Reverse passing off claims concerning works that are the

subject of copyright are preempted by the Copyright Act.  *See, e.g.*, *Bath Auth., LLC v. Anzzi*

*LLC*, 2018 WL 5112889, at *7 (E.D. Pa. Oct. 19, 2018) (reverse passing off claim related to

"instruction manuals, diagrams and figures" preempted); *Daley v. Firetree, Ltd*., 2006 WL

148879, at *3-5 (M.D. Pa. Jan. 19, 2006) (reverse passing off claim related to "literary works"

preempted); *Nicassio v. Viacom Int'l, Inc*., 309 F. Supp.3d 381, 396-97 (W.D. Pa. 2018) (reverse

passing off claim related to children's literature preempted), *aff'd*, 776 F. App'x 761 (3d Cir.

2019).

However, this case is distinguishable from such precedents, because as a typeface,

Neutraface is not a work subject to copyright under Section 102 or 103 of the Copyright Act.

37 C.F.R. § 202.1(e).  The second prong of the preemption test is therefore unmet, 17 U.S.C.

§ 301(a), and House's state common law claim of unfair competition through reverse passing off

against Rite Aid is not preempted by the Copyright Act.  *Dun & Bradstreet Software Servs., Inc.*,

307 F.3d at 219.

### B.  Breach of Contract

House brings a breach of contract claim against Burns Group, PureRED, and Rite Aid, in

relation to the various licensing agreements executed by these defendants.  To state a claim for

breach of contract, a plaintiff must allege "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract[,] and (3) resultant damages."  *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 225 (3d Cir. 2003) (alteration in original) (quoting *CoreStates Bank, N.A. v. Cutillo*, 723 A.2d 1053, 1058 (Pa. Super. 1999)).

### *i.*    *Burns Group*

House asserts that Burns Group violated the desktop license it held for Neutraface by using that font to create the New Rite Aid Logo.  House's desktop licenses expressly prohibit "uses of the Licensed Software and Fonts and glyphs generated thereby" in a "logo," defined as "a unique set of stylized letters, optionally integrated with graphic elements, *adopted as a proprietary identifier*, such as a trademark."  (emphasis added).

Burns Group argues that because the New Rite Aid Logo was adopted as a proprietary identifier not by Burns Group (the licensee), but by Rite Aid, House has not stated a claim for breach of contract through the use of Neutraface in a "logo" by Burns Group.  The definition of "logo" does not support Burns Group's argument.  It does not include any reference as to which entity must adopt the graphic elements as a "proprietary identifier"; it simply states that it must be adopted.

In other words, it does not specify who—be it the licensee, the licensee's client, or some other third party—may adopt the "unique set of stylized letters" as a "proprietary identifier" in order for those letters to constitute a "logo."  The Parties set forth vying interpretations: Burns Group argues that paragraph 4 of the desktop license, which requires a licensee's client to purchase its own license if it "needs to install the font data itself," supports the interpretation that a "logo" is only a "logo" if adopted by the licensee.  In support of its broader interpretation, House points to the preamble of the desktop license, which provides that the licensee is

"agreeing to the terms of this License personally and on behalf of any Entity on behalf of which you are downloading, installing, or using the Licensed Software."  This clause, House argues, demonstrates that the prohibition on certain uses of Neutraface applies equally to logos that Burns Group creates "on behalf of" its clients.

Which differing interpretation is correct cannot resolved by looking to the terms of the contract, thus it is ambiguous:  It is "'reasonably susceptible of different constructions and capable of being understood in more than one sense.'"  *Gen. Refractories Co. v. First State Ins. Co.*, 855 F.3d 152, 159 (3d Cir. 2017) (quoting *Madison Constr. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 106 (Pa. 1999)).  Ambiguous contract terms present a question for the jury. *Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 587 (3d Cir. 2009).

### ii.    PureRED

House alleges that PureRED breached its desktop license "by continuing to engage in unauthorized uses of Neutraface, including using it in connection with the New Rite Aid Logo, after the agreement was signed."

The allegation that PureRED generally engaged in "unauthorized uses" of Neutraface is a legal conclusion that must be disregarded.  *Fowler*, 578 F.3d at 210-11.  As recounted by the Complaint, PureRED's role in this story is principally as an intermediary on Rite Aid's behalf in the negotiation of various licensing agreements with House.  The Complaint contains only one factual allegation with respect to PureRED's actual use of Neutraface: that, along with Burns Group and another advertising agency, it "us[ed] Neutraface to create a logo for Rite Aid and prepar[ed] materials incorporating Neutraface."  But this allegation appears under Count II of the Complaint, the unjust enrichment claim, and is not incorporated into Count I for breach of contract.  It therefore cannot be considered in determining whether House stated a claim for

breach of contract.

Absent any factual allegations concerning PureRED's use of Neutraface in breach of the desktop license, House's breach of contract claim against it will be dismissed without prejudice.

### iii.   *Rite Aid*

House's breach of contract claim against Rite Aid implicates three different types of agreements: the standard form desktop license (of which Rite Aid held two), and two different advertising licenses.  Each will be considered in turn.

#### a.   Rite Aid's Desktop Licenses

The standard form desktop licenses held by Rite Aid prohibit various "uses of the Licensed Software and Fonts and glyphs generated thereby," including in a logo, on any product for sale, on product packaging, and in TV advertising.  House claims that Rite Aid breached the desktop licenses by engaging in such prohibited uses of Neutraface, in other words, the "Fonts and glyphs" generated by the Licensed Software.  Rite Aid first contends that a claim for breach would require allegations that "the licensee itself" misused the "Licensed Software," and that there are no such allegations in the Complaint.  But this narrow interpretation ignores the plain language of the licenses, which prohibits certain uses of both the Licensed Software *and* the Fonts and glyphs it generates.

Rite Aid next argues that because the advertising agencies, not Rite Aid, generated the Fonts and glyphs used in the New Rite Aid Logo, it did not breach the desktop licenses.  This argument introduces new facts not found in the allegations of the Complaint, and which therefore cannot be considered on a motion to dismiss.  *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014).  House's claim that Rite Aid breached the desktop licenses will not be dismissed.

#### b.   Rite Aid's Advertising Licenses

House also claims that Rite Aid breached both of its advertising licenses.  The Print License and the Digital License each confer a limited license to use "Font Data" for different types of advertising—respectively, "Print/[Point-of-Sale]/Signage Advertising" and "Digital/Social Media/Web Advertising."  Each license provides that it "does not grant to Licensee any right, title or interest in or to the font and/or font data, other than the grant of rights expressly provided in this Agreement" (the "Reservation of Rights Clause") and that the Licensee "shall not . . . engage in any unauthorized use of the Fonts or Font Data" (the "Unauthorized Use Clause").  The fonts listed in each agreement are Neutraface Text Demi Alt, Neutraface Text Bold Alt, and Neutraface Text Book Alt.

House claims that Rite Aid's use of Neutraface breached the Reservation of Rights Clause and the Unauthorized Use Clause of each advertising license.  Rite Aid contends that a claim for breach of these agreements would require allegations that "the licensee itself" misused the "Font Data."  This interpretation is again too narrow.  The Print License and the Digital License prohibit "unauthorized use" of the "Fonts" as well as the "Font Data."  The fonts listed in the licenses are Neutraface fonts and House claims that Rite Aid misused Neutraface. Therefore, it has stated a claim for breach of contract.[3]

### C. Unjust Enrichment

"[T]o sustain a claim of unjust enrichment, the claimant must show that the party against whom recovery is sought either wrongfully secured or passively received a benefit that would be unconscionable for the party to retain without compensating the provider."  *Hershey Foods Corp. v. Ralph Chapek, Inc.*, 828 F.2d 989, 999 (3d Cir. 1987) (citing *Torchia on behalf of*

---

[3] In its reply brief, Rite Aid adds that the breach of contract claim should at least be dismissed as to conduct that occurred before Rite Aid entered into any contract with House.  Arguments raised for the first time on reply are waived.  *Laborers' Int'l Union of N. Am. v. Foster Wheeler Corp.*, 26 F.3d 375, 398 (3d Cir. 1994).

*Torchia v. Torchia*, 499 A.2d 581 (Pa. Super. 1985)).  House brings a claim for unjust

enrichment against Burns Group, PureRED, and Rite Aid.  House alleges that, by using

Neutraface in the New Rite Aid Logo without a license, these defendants unjustly reaped a

benefit from House.  The benefits allegedly reaped are use of the font, as well as Rite Aid's

profits and sales derived therefrom.

### i.  Burns Group

Burns Group argues that House's unjust enrichment claim must be dismissed because that

avenue of relief is unavailable when a valid, binding contract exists between the parties.  This

argument sounds in the gist of the action doctrine, which bars plaintiffs from pursuing recovery

in tort for the breach of a duty created by contract.  *Bruno v. Erie Ins. Co.*, 106 A.3d 48, 60 (Pa.

2014).

Under this doctrine, a tort claim is properly dismissed if "the true gist or gravamen of the

claim was for breach of a contract which existed between the parties."  *Id.* at 68.  "[T]he critical

determinative factor in determining whether the claim is truly one in tort, or for breach of

contract" is "the nature of the duty alleged to have been breached, as established by the

underlying averments supporting the claim in a plaintiff's complaint."  *Id.*  "If the facts of a

particular claim establish that the duty breached is . . . a specific promise to do something that a

party would not ordinarily have been obligated to do but for the existence of the contract—then

the claim is to be viewed as one for breach of contract."  *Id.*  "If, however, the facts establish that

the claim involves the defendant's violation of a broader social duty owed to all individuals,

which . . . exists regardless of the contract, then it must be regarded as a tort."  *Id.*  For example,

unjust enrichment may be pled in the alternative to a breach of contract claim if "the contract at

issue covers only a part of the relationship between the parties" or if "the existence of a contract

is uncertain or its validity is disputed by the parties." *I.M. Wilson, Inc. v. Otvetstvennostyou "Grichko"*, 500 F. Supp.3d 380, 421-22 (E.D. Pa. 2020) (quoting *Vantage Learning (USA), LLC v. Edgenuity, Inc.*, 246 F. Supp.3d 1097, 1100 (E.D. Pa. 2017)).

Here, the allegations of the Complaint are that work on the New Rite Aid Logo began no later than December 2019, that Rite Aid hired Burns Group to create it, and that Burns Group used Neutraface to do so. Drawing all inferences in plaintiff's favor, *In re Asbestos Prods. Liab. Litig. (No. VI)*, 822 F.3d at 131, it is plausible that Burns Group began using Neutraface in its work on the New Rite Aid Logo before it acquired a desktop license from House in July 2020. In light of allegations that Burns Group's unauthorized conduct predated the applicable contract, it would be premature to dismiss the unjust enrichment claim against Burns Group by operation of the gist of the action doctrine.

Burns Group also argues that the analogous "economic loss doctrine" bars House's claim. This doctrine has a murky history in the courts. In 2009, the Pennsylvania Supreme Court defined it as providing that "no cause of action exists for negligence that results solely in economic damages unaccompanied by physical injury or property damage," *Excavation Techs., Inc. v. Columbia Gas Co.*, 985 A.2d 840, 841 n.1 (2009). But in 2018, the Pennsylvania Supreme Court rejected this statement as dicta. *Dittman v. UPMC*, 196 A.3d 1036, 1055-56 (2018). *Dittman* harkened back to an earlier case, *Bilt-Rite Contractors, Inc. v. The Architectural Studio*, 866 A.2d 270 (Pa. 2005), to reaffirm Pennsylvania's adherence to a "reasoned approach" to the economic loss doctrine, and instructed that it turns on the following test: "if the duty arises under a contract between the parties, a tort action will not lie from a breach of that duty. However, if the duty arises independently of any contractual duties between the parties, then a breach of that duty may support a tort action." *Id*. at 1054 (citing *Bilt-Rite*

*Contractors, Inc.*, 866 A.2d at 288).

After *Dittman*, there appears to be no distinction pertinent here between the economic loss doctrine and the gist of the action doctrine. *Compare id.* (economic loss doctrine turns on whether the duty allegedly breached arises under contract or independently of contract) *with Bruno*, 106 A.3d at 68 (gist of the action doctrine turns on whether the duty allegedly breached arises under contract or in tort). Because some of the alleged conduct falls outside the temporal scope of the applicable licensing agreement, House has plausibly alleged that Burns Group acted in contravention of a duty "arising independently of [] contractual duties." *Dittman*, 196 A.3d at 1056. The economic loss doctrine therefore provides no basis for dismissing House's claim.

Burns Groups also moves to dismiss this claim for failure to state a claim under Rule 12(b)(6). Specifically, it argues that House's unjust enrichment claim fails as a matter of law because it is unaccompanied by a "companion" tort claim. This argument is without support.[4] To state an unjust enrichment claim, a plaintiff need only show (1) "benefits conferred on defendant by plaintiff"; (2) "appreciation of such benefits by defendant"; and, (3) "acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value." *Schenck v. K.E. David, Ltd.*, 666 A.2d 327, 328 (1995) (citation omitted). No "companion tort claim" is required, as is evident from the many cases in which no such companion claim is brought. *See, e.g.*, *Mitchell v. Moore*, 729 A.2d 1200, 1202 (Pa. Super. 1999) (advancing claims for unjust enrichment and implied contract); *Ne. Fence & Iron Works, Inc. v. Murphy Quigley Co.*, 933 A.2d 664, 667 (Pa. Super.

---

[4] The case on which Burns Group relies does not bind this Court and it stands only for the proposition that an unjust enrichment claim based on the same conduct as a separate tort claim "will rise or fall with the underlying claim" and "cannot stand alone as a substitute for the failed tort claim." *Whitaker v. Herr Foods, Inc.*, 198 F. Supp.3d 476, 493 (E.D. Pa. 2016). *Whitaker* did not hold that unjust enrichment claims can never be brought alone.

15

2007) (alleging breach of contract, unjust enrichment, and violation of a state statute).  House's

unjust enrichment claim against Burns Group will not be dismissed.

### ii.    PureRED

House's unjust enrichment claim against PureRED rests on the allegation that PureRED

received a benefit by "using Neutraface to create a logo for Rite Aid and preparing materials

incorporating Neutraface" without a license.

Like Burns Group, PureRED argues that House's unjust enrichment claim must be

dismissed because of the licensing agreements.  Here, the Complaint alleges that PureRED,

Burns Group, and another advertising agency created the New Rite Aid Logo using Neutraface,

that work began by December 2019, and that the first licensing agreement PureRED entered into

on its own behalf was executed in May 2020.  Drawing all inferences in House's favor, *In re*

*Asbestos Prods. Liab. Litig. (No. VI)*, 822 F.3d at 131, the Complaint plausibly alleges that

PureRED used Neutraface to create the New Rite Aid Logo before executing a licensing

agreement with House, such that it would be premature to dismiss this claim under the gist of the

action doctrine.

PureRED next moves to dismiss this claim under Rule 12(b)(6).  PureRED first argues

that the Complaint does not plausibly plead that House conferred a benefit on PureRED because

"the New Rite Aid Logo was not given to PureRED by House, and it was not designed or created

by PureRED using the software it licensed from House."  These new facts cannot be considered

on a motion to dismiss.  *Schmidt*, 770 F.3d at 249.

PureRED further contends that House's allegation that it has "been unjustly enriched by

using [Neutraface] without paying the price of a license" is a legal conclusion that must be

disregarded.  The statement that PureRED was "unjustly enriched" certainly is a legal

conclusion, but what follows—that PureRED used Neutraface without a license—is not a legal conclusion.  This factual allegation describes the benefit purportedly received by PureRED, which satisfies the first element of an unjust enrichment claim.  *Schenck*, 666 A.2d at 328.

Finally, PureRED maintains that any benefit it received would not be *unjustly* retained because PureRED did nothing but reproduce the image and therefore was "at most, an incidental, indirect beneficiary of an alleged uncompensated benefit conferred by House on other parties." This argument again impermissibly relies on facts not found in the Complaint.  *Schmidt*, 770 F.3d at 249.  Taking the allegations in the Complaint as true, PureRED was not just a third-party beneficiary to an agreement between House, Rite Aid, and Burns Group.  House asserts that PureRED used Neutraface to "create" the New Rite Aid Logo and to "prepare" related materials, without authorization.  House's unjust enrichment claim against PureRED will not be dismissed.

### iii.    Rite Aid

Rite Aid seeks to dismiss House's unjust enrichment claim as duplicative of its breach of contract claim.  This gist of the action argument fails for the same reason it failed for the other defendants: the Complaint alleges that Rite Aid's unauthorized use of Neutraface began at least by December 2019, before Rite Aid executed its first licensing agreements with House in March 2020.  It would therefore be premature to dismiss the unjust enrichment claim against Rite Aid on these grounds.

### D.  False Designation of Origin

House brings a claim against Rite Aid for false designation of origin under Section 43(a) of the Lanham Act, the federal trademark statute, which imposes liability for "'false or misleading' claims that are 'likely to cause confusion, or to cause mistake, or to deceive as to . . . the origin, sponsorship, or approval of his or her goods, services, or commercial activities by

17

another person[.]'" *Parks LLC v. Tyson Foods, Inc*, 863 F.3d 220, 226 (3d Cir. 2017) (quoting 15 U.S.C. § 1125(a)(1)(A)).

Rite Aid argues that House's false designation claim is barred by the Supreme Court's decision in *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003). *Dastar* stands for the proposition that the Lanham Act protects trademarks, not copyrights. *See e.g.*, *WickFire, L.L.C. v. Woodruff*, 989 F.3d 343, 351 (5th Cir. 2021) ("We understand *Dastar* to stand for the general proposition that one cannot shoehorn what essentially amounts to a . . . putative copyright violation into a Lanham Act claim."). Specifically, the Supreme Court held that a plaintiff cannot re-purpose Section 43(a) of the Lanham Act, which aims to curb those types of unfair competition that resemble trademark infringement, *Dastar Corp.*, 539 U.S. at 28-29, 32, to enjoin the unaccredited copying of a creative work, which is a matter for resolution under the Copyright Act. *Id.* at 33-34.

The crux of House's Section 43(a) claim is that Rite Aid has used its new logo in a manner that "is deceiving customers into believing that House's proprietary font design is exclusively associated with Rite Aid," and which "misrepresents that [Rite Aid], not House, is the source of Neutraface or goods or services bearing Neutraface." As discussed above, as a typeface, Neutraface is not a work subject to copyright. Therefore, in seeking to protect it, House is not bringing a copyright claim that would be barred by *Dastar*.

Rather, House is bringing a reverse passing off claim to protect its "goods." A reverse passing off claim has four elements: "(1) that the work at issue originated with the plaintiff; (2) that origin of the work was falsely designated by the defendant; (3) that the false designation of origin was likely to cause consumer confusion; and (4) that the plaintiff was harmed by the defendant's false designation of origin." *Syngenta Seeds, Inc. v. Delta Cotton Co-op., Inc.,* 457

F.3d 1269, 1277 (Fed. Cir. 2006) (citation omitted).

The Complaint alleges that, by using House's product (Neutraface) in its new logo, Rite Aid is representing itself as the source of Neutraface, "improperly deceiving consumers into believing that the Neutraface font is affiliated or associated exclusively with Rite Aid," and destroying the value of Neutraface.[5]  With the following caveat, House has alleged facts sufficient to meet these elements.  Whether House's theory of passing off would survive closer scrutiny is an open question.  It is not a traditional formulation of such a claim, in that Rite Aid is displaying Neutraface, not selling it, but Rite Aid has not objected to the claim on those grounds.  Rite Aid's only rebuttal is that this theory is "irrelevant" because Rite Aid does not sell font software.  This argument is not responsive to House's claim that Neutraface—the font, not the underlying software—is a "good" that Rite Aid is passing off as its own.

At this stage, the complaint is construed "in the light most favorable to the plaintiff," *Fowler*, 578 F.3d at 210, and all reasonable inferences are drawn in the plaintiff's favor.  *In re Asbestos Prods. Liab. Litig. (No. VI)*, 822 F.3d at 131.  As Rite Aid has not articulated any well-formulated arguments supporting dismissal of this Section 43(a) reverse passing off claim, House will be permitted to develop that theory of liability in discovery.

### E.  Common Law Unfair Competition and Reverse Passing Off

"[T]he test for common law trademark infringement and unfair competition is essentially the same test as the test for infringement and unfair competition under the Lanham Act" and the analysis is "virtually the same."  *Flynn v. Health Advoc., Inc.*, 169 F. App'x 99, 100 n.3 (3d. Cir.

---

[5] Nontangible products can theoretically find protection as "goods" within the meaning of the Lanham Act.  *See Pellegrino v. Epic Games, Inc.*, 451 F. Supp.3d 373, 378, 385 (E.D. Pa. 2020) (buyable virtual content of video game is a "tangible good"); *Edison Motor Sales, LLC v. Dibre Auto Grp., LLC*, 2012 WL 5199764, at *7 (D.N.J. Oct. 19, 2012) (domain names are protectable goods that can be "included in false designation of origin claims"); *Harbour v. Farquhar*, 245 F. App'x 582, 583 (9th Cir. 2007) (completed television programs for sale to the public constituted "goods" distinct from the musical compositions embodied therein).

2006) (citation omitted); *see also Checker Cab Phila., Inc. v. Uber Techs., Inc.*, 2015 WL 966284, at \*3 n.3 (E.D. Pa. Mar. 3, 2015) ("[A]n unfair competition claim under Pennsylvania common law is the equivalent of a federal Lanham Act claim." (collecting cases)).

But Rite Aid raises an additional ground for dismissing the common law claims: that, based on the allegations in the Complaint, Rite Aid and House are not competitors. *See Pellegrino*, 451 F. Supp.3d at 383 ("To plead a claim for unfair competition under Pennsylvania common law, a complaint must allege that the plaintiff is in competition with the defendant— that is, that the plaintiff and the defendant supply similar goods or services." (cleaned up) (quoting *Am. Bd. of Internal Med. v. Von Muller*, 2011 WL 857337, at \*11 (E.D. Pa. Mar. 10, 2011))).

House did not respond to this argument.  As a result, it has waived any response and its common law unfair competition and reverse passing off claims will be dismissed without prejudice.  *Levy-Tatum v. Navient Sols., Inc.*, 183 F. Supp.3d 701, 712 (E.D. Pa. 2016) (plaintiff's failure to address defendant's arguments resulted in abandonment of those claims).

## F.  False or Fraudulent Registration

The last claim asserted in the Complaint is one of false or fraudulent registration under 15 U.S.C. § 1120 against Rite Aid and Name Rite.  This provision creates a civil cause of action against any person who procures the registration of a mark with the United States Patent and Trademark Office ("USPTO") "by a false or fraudulent declaration or representation, oral or in writing, or by any false means."  15 U.S.C. § 1120.  To prevail, the plaintiff must show that the "applicant or registrant knowingly ma[de] a false, material representation with the intent to deceive the PTO."  *Covertech Fabricating, Inc. v. TVM Bldg. Prods., Inc.*, 855 F.3d 163, 174-75 (3d Cir. 2017) (quoting *In re Bose Corp.*, 580 F.3d 1240, 1245 (Fed. Cir. 2009)).

On March 16, 2020, Name Rite submitted an intent-to-use application for the registration of two word and design marks with the USPTO:[6]



| | |
|---|---|
| **U.S. Reg. No. 6,258,269** | **U.S. Reg. No. 6,357,235** |

In support of each application, a Name Rite representative attested under penalty of perjury to his belief "that the applicant is entitled to use the mark in commerce."  On October 30, 2020, Name Rite filed a statement of use for each mark, attesting that "the applicant is the owner of the trademark/service mark sought to be registered."  House maintains that these representations were false because neither Rite Aid nor Name Rite held a license to "(a) use the Neutraface font in a logo; or (b) claim any ownership right in the Neutraface font or any glyphs created thereby."  Rite Aid and Name Rite move to dismiss this claim on the ground that the statements at issue are not false because they are true as to ownership of the *marks* sought to be registered.

To be actionable, the "'false or fraudulent' representation prohibited by [Section 1120] must relate to the *trademark right* that is registered, not to some other allegedly illegal aspect of the registrant's conduct."  6 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 31:85 (5th ed. June 2022 Update) (emphasis added) (citing *Welsh v. Big Ten Conference, Inc*., 2008 WL 5070321 (N.D. Ill. 2008)).  "[A] challenging party must adduce

---

[6] An applicant may file an intent-to-use application if it is not yet using the mark in commerce, for the purpose of establishing priority rights as of the date of filing, so long as it subsequently files a statement of actual use within the allotted period.  *Lucent Info. Mgmt., Inc. v. Lucent Techs., Inc.*, 186 F.3d 311, 314 n.3 (3d Cir. 1999) (citing 15 U.S.C. §§ 1051(b), (d)).

evidence that the registrant actually knew or believed that someone else had a right *to the mark*."
*Marshak v. Treadwell,* 240 F.3d 184, 196 (3d Cir. 2001) (emphasis added) (citing *Metro Traffic Control, Inc. v. Shadow Network Inc.*, 104 F.3d 336, 340 (Fed. Cir. 1997)).

House has not alleged that Name Rite's representations are false as to the "trademark right that is registered"—it does not assert that it had a prior right to use the marks or that Name Rite does not own them.  Rather, House's claim is analogous to the claim dismissed in *Welsh v. Big Ten Conference, Inc.*, 2008 WL 5070321 (N.D. Ill. 2008).  Welsh was a fan of the athletics events sponsored by The Big Ten Conference, Inc. ("BTC").  *Id.* at *1.  One day, he had an idea to create a sports network called "The Big Ten."  *Id.*  He pitched his idea to BTC, but they had no interest in working with him.  *Id.*  A few years later, BTC launched the "Big Ten Network," featuring programming similar to what Welsh had proposed.  *Id.*

Welsh claimed that BTC obtained a mark for "Big Ten Network" fraudulently under Section 1120 by failing to inform the USPTO that Welsh held trade secret rights in the name "Big Ten Network" and in his business ideas.  *Id.* at *2.  The district court rejected this broad interpretation of Section 1120, and declined "to expand the reach" of the Lanham Act, a trademark statute, to encompass Welsh's claim for misappropriation of trade secrets.  *Id.* at *5.

While *Welsh* is non-precedential, its reasoning is persuasive here.  House does not claim to have any trademark rights in Name Rite's marks.  It seeks to cancel Name Rite's registration due to some "other allegedly illegal aspect of the registrant's conduct"—the unauthorized use of its font, which it concedes does not function as a mark.  Section 1120 provides no avenue of relief for such allegations because the failure to inform the USPTO that the font depicted in the marks had been created by House, not Rite Aid, is not a cognizable falsity under Section 1120.

House's false registration claim will be dismissed with prejudice.[7]

      An appropriate order follows.

**BY THE COURT:**

**/s/ Hon. Wendy Beetlestone**

_____

**WENDY BEETLESTONE, J.**

---

[7] As the statements are not false within the meaning of the Act, Rite Aid and Name Rite's arguments concerning standing and pleading under Federal Rule of Civil Procedure 9(b) need not be addressed.