## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

BRAND DESIGN COMPANY, INC. d/b/a
HOUSE INDUSTRIES,

     *Plaintiff*,

       v.

RITE AID CORPORATION; SWAY CREATIVE
LABS, LLC; GA COMMUNICATIONS, INC.,
d/b/a PURERED CREATIVE, LLC; BURNS
GROUP NYC, LLC,

     *Defendants*.

Case No. 2:22-cv-1174

**JURY TRIAL DEMANDED**

## FIRST AMENDED COMPLAINT

1.    This is a breach of contract, unfair competition, and unjust enrichment case. Plaintiff Brand Design Company d/b/a House Industries ("House") is a well-known design firm that creates fonts, logos, and brand identities. Its clients include Hermès, Ford, and Louis Vuitton, among many other famous brands.

2.    Rite Aid Corporation ("Rite Aid") recently rebranded its entire multi-billion-dollar business using a proprietary font owned by House (named "Neutraface"), including a new logo incorporating the font:

**Old Logo**



**New Logo**



3.    Upon information and belief, Rite Aid uses or intends to use the House font and its new logo incorporating the font on signs on more the 2,400 stores, on countless signs within those

stores, on Rite Aid brand product packaging, online, and in television advertising, among other places.  For example:















*See generally* https://www.pennlive.com/news/2020/10/rite-aid-debuts-its-store-of-the-future.html; https://investors.riteaid.com/resources/Media-Gallery/; and https://s27.q4cdn.com/633053956/files/doc_presentations/2021/JPM-Conference-Intro-Slides-1.11.2021.pdf.

    4.    Press reports indicate that Rite Aid's enterprise-wide rebranding, which centers on its new logo, will take several years and Rite Aid intends to spend more than $700,000,000 on the rebranding. *See generally* https://www.pennlive.com/life/2020/03/it-is-a-new-day-at-rite-aid-rite-aid-unveils-new-logo.html and https://www.pilotonline.com/business/vp-bz-sway-riteaid-20200825-7c3z53d2rjc2pafncydwpbc4gi-story.html.

5.      Rite Aid and its creative and advertising agencies—defendants Sway Creative Labs, LLC ("Sway"), GA Communications, Inc. d/b/a/ PureRED Creative ("PureRED"), and Burns Group NYC, LLC ("Burns Group")—used House's Neutraface font either without authorization or in violation of prohibitions in their license agreements with House.

6.      Upon information and belief, Sway and/or Burns Group created Rite Aid's new logo at Rite Aid's direction.  Sway and Burns Group's only licenses with House for the Neutraface font *expressly prohibit use of the font in a logo*.  *See* Ex. A (House "Desktop License" stating: "The following uses of the Licensed Software and Fonts and glyphs generated thereby are expressly NOT PERMITTED under this agreement . . . k. In a logo.").  The agreement defines a "logo" as "a unique set of stylized letters, optionally integrated with graphic elements, adopted as a proprietary identifier, such as a trademark." *Id*.

7.      All of the agreements between House and either Rite Aid or its agencies prohibit the use of the House Neutraface font in a logo.  Rite Aid and PureRED signed the same "Desktop" license agreements containing the same logo prohibitions.

8.      Upon information and belief, Rite Aid's in-house creative team created a logo for the new "Rite Aid Rewards" program.  Like the New Rite Aid Logo, the Rite Aid Rewards Logo uses Neutraface.  None of the Rite Aid's license agreements with House permitted it to use the font in a logo, and the use of Neutraface in a logo was expressly prohibited by the Desktop License Rite Aid agreed to when it downloaded Neutraface and the Neutraface software before creating the Rite Aid Rewards Logo.  *See* Ex. A.

9.      As described more fully below, Rite Aid also makes numerous other uses of House's Neutraface font that are both unauthorized and prohibited in each of its license agreements.  For example, its use on store brand product packaging, such as prescription bottles,

and television advertising is unauthorized and prohibited by its existing license agreements.  *See* Ex. A (House "Desktop License" agreement entered into with Burns Group, Rite Aid, and PureRED prohibiting use on "[a]ny product for sale, product packaging, . . . and/or tv advertising."); Ex. B (House license with PureRED on behalf of Rite Aid granting limited right to use for "Print/POS/Signage Advertising" and stating "All rights not granted by this license are expressly reserved by Licensor.  Licensee shall not . . . engage in any unauthorized use of the Fonts or Font Data."); Ex. C (House license with PureRED on behalf of Rite Aid granting limited right to use for "Digital/Social Media/Web Advertising" and stating "All rights not granted by this license are expressly reserved by Licensor.  Licensee shall not . . . engage in any unauthorized use of the Fonts or Font Data.").

10. After learning of the true scope of Rite Aid's use of its font House repeatedly attempted to address the issue with Rite Aid without success.  Despite requests, Rite Aid has never identified any license agreement with it or its agencies that permits its actual scope of use.

11. House is discerning in its licensing.  It avoids licensing its fonts in a manner that would allow the design to potentially become exclusively associated with a single licensee.  For example, House excludes logo use and use on products from its form license agreements and only infrequently permits custom, limited-scope license agreements for such uses because they may undermine the value of the font as a licensable design property.  House's font designs are intended to evoke a mood or an aesthetic that anyone can license; its designs are not intended and are not licensed to evoke ***an exclusive association with any one company***, i.e., to act as a brand.

12. By adopting Neutraface as part of its logo, Rite Aid necessarily created an association between House's font design and Rite Aid as source.  That is the entire purpose of a design mark.  Not only did Rite Aid take for its own what House does not license, it also

fundamentally undermined the licensable value of Neutraface.  This harm is magnified by the incredibly broad scope of Rite Aid's unauthorized uses.  By using Neutraface so extensively as its own **brand**, Rite Aid threatens to destroy the present and future licensable value of the font. Consumers have already reacted negatively to Neutraface in response to Rite Aid's unauthorized uses:



13.     Defendants' conduct described above (and more fully below) constitutes breach of contract, violations of the Lanham Act, and unjust enrichment.  As a result of this conduct, House has been and will be irreparably harmed.  It also has caused monetary harm in an amount to be determined at trial.

14.     In addition, Rite Aid is not authorized to use the font in a logo, is contractually prohibited from using Neutraface in a logo, and the Rite Aid, PureRED, Burns Group, and Sway Desktop License agreements state that any artwork designs based on the glyphs (i.e., the letter forms) generated by House's font software "shall be the exclusive property of House Industries." *See* Ex. A.

## **THE PARTIES**

15.     Brand Design Company, Inc., d/b/a House Industries is a Delaware corporation with its principal place of business at 1145 Yorklyn Road, Yorklyn, Delaware 19736.

16.     Rite Aid Corporation is a Delaware corporation with its principal place of business at 30 Hunter Lane, Camp Hill, Pennsylvania 17011.

17.     Sway Creative Labs, LLC is a Virginia limited liability company with its principal place of business at 524 Washington Park, Suite 1, Norfolk, Virginia, 23517.

18.     GA Communications, Inc. d/b/a PureRED Creative, LLC is a Georgia limited liability company with its principal place of business at 2196 West Park Court, Stone Mountain, Georgia, 30087.

19.     Burns Group NYC, LLC is a New York limited liability company with its principal place of business at 220 West 19th Street, 12th Floor, New York, New York 10011.

## JURISDICTION AND VENUE

20.     This Court has subject matter jurisdiction over these claims pursuant to 15 U.S.C. § 1121(a), 28 U.S.C. §§ 1331, 1338(a) and (b), and this Court's supplemental jurisdiction under 28 U.S.C. § 1367(a).

21.     Upon information and belief, Rite Aid Corporation's headquarters is in Camp Hill, Pennsylvania and regularly conducts business in Pennsylvania.

22.     Upon information and belief, Sway Creative Labs, LLC ("Sway") regularly conducts business in Pennsylvania.  Specifically, and as supported by the factual allegations contained below, Sway promoted and sold the services it provided to Rite Aid at issue here in Pennsylvania in exchange for pecuniary compensation.  Sway entered into a confidentiality agreement with Rite Aid that covered the all the work Sway did for Rite Aid beginning in December 2019 and a Master Services Agreement that governed design work completed by Sway for Rite Aid beginning in 2021.  Both agreements contain Pennsylvania choice of law provisions and Pennsylvania forum selection clauses wherein Sway agrees that any dispute between it and Rite Aid would be governed by Pennsylvania law and that it consented to venue in Pennsylvania.

23.     Sway has had repeated, intentional contacts with Rite Aid and Rite Aid employees located in Pennsylvania for the purpose of conducting business in Pennsylvania, including repeated contact with Rite Aid employees through email and telephone regarding the scope of Sway's work for Rite Aid in connection with the rebranding and other work for Rite Aid.  During the course of Sway's work for Rite Aid, it submitted multiple estimates and invoices directly to Rite Aid's corporate headquarters in Pennsylvania, including for work on new iterations of the Rite Aid logo and word marks.   Rite Aid paid Sway with checks issued from Rite Aid's Pennsylvania headquarters and sent from a P.O. Box in Pennsylvania.

24.     Upon information and belief, GA Communications, Inc. d/b/a PureRED Creative, L.L.C. regularly conducts business in Pennsylvania in exchange for pecuniary compensation. Specifically, PureRED promotes and sells its services, including the services it provided to Rite Aid at issue here, in Pennsylvania.  Furthermore, upon information and belief, PureRED maintains an office in Pennsylvania at 129 Robbins Station Road, North Huntingdon, Pennsylvania 15642. *See* https://www.purered.net/locations/.   In addition, PureRED maintains a website available in Pennsylvania that facilitates and/or enables users to purchase the infringing services from Pennsylvania.  *See* https://www.purered.net/locations/ ("We are located where our clients need us.").

25.     Upon information and belief, Burns Group NYC, L.L.C. regularly conducts business in Pennsylvania in exchange for pecuniary compensation.  Specifically, Burns Group NYC, L.L.C. promotes and sells its services, including the services it provided to Rite Aid at issue here, in Pennsylvania.  In addition, Burns Group NYC, L.L.C. maintains a website available in Pennsylvania that facilitates and/or enables users to purchase the infringing services from Pennsylvania.

26.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because all defendants reside in the District because they all defendants are subject to the Court's personal jurisdiction.

## FACTUAL BACKGROUND

27.     Over twenty-five years ago, Andy Cruz and Rich Roat launched a novel independent typeface foundry that became known as House Industries.  Over time, House built a small creative team that developed a portfolio of fun, hand-crafted, design-driven, proprietary fonts.  The team also provides custom design services creating logos and branding.  House's clients include many famous brands, including Herman Miller, Eames, The New Yorker, and Jimmy Kimmel among many other brands and household names.

28.     One of House's proprietary font designs is Neutraface, which is a design family with several variations and "weights."  For example:





29.     Named after and inspired by the work of architect Richard Neutra, Neutraface has become one of House's most popular fonts, valued for its sophistication and clean architectural lines.

30.     It took House's internal design team several years and thousands of hours to develop its family of Neutraface fonts.

31.     House has expended considerable effort to protect fonts and designs like Neutraface.  Anyone who wishes to use a House font must agree to purchase a license for the font software that produces the font.   To use the font, a user must license and download the software used to generate the font, and only use the fonts and resulting characters ("glyphs") for the specific uses authorized by the license terms.  House explains this process and its importance in clear, user-friendly detail in its "Licensing FAQ."  *See* https://houseind.com/faq#web-fonts.

32.     House has particularly strict prohibitions on use of its font software or glyphs generated from use of the software to create logos.  For example, its standard form "Desktop" license agreement states:

> The following uses of the Licensed Software and Fonts and glyphs generated thereby are expressly **NOT PERMITTED** under this agreement . . . k. **In a logo**.

*See* Ex. A (capitalization in original; bold added).

33.     This and other restrictions are in place because the value of the font software and the resulting glyphs lies in the ability to license the designs repeatedly to different licensees over an extended period, just as House has done with Neutraface since 2002.  If a font becomes associated with one particular brand, for example, through use in a logo, that long-term value disappears.  Because of this concern, House's license agreements expressly prohibit use of the font software or resulting glyphs for use in connection with logos.

34.     House infrequently negotiates limited scope agreements with companies that wish to use House's proprietary software to develop a logo.  This gives House control over the value of the fonts it has expended considerable time, money, and effort into developing, avoiding any font becoming part of any one company's brand identity.

**Initial Negotiations with Rite Aid's Agency, PureRED**

35.     In February 2020, House began negotiations with Rite Aid's ad agency, PureRED, for licenses to use fonts in the Neutraface family for digital, social media, and web advertising. House specified that using the font as part of a logo would require a separate license and different fee, depending on the brand or product used in connection with the font.  In early March, PureRED informed House that "Rite Aid decided to go with a different font for web [usage] but still plans to use Neutraface for print pieces which [PureRED] will be producing on their behalf."

36.     PureRED asked House whether they had any record of "[PureRed] already having a license for this font" or if a previous agreement between PureRED and House would apply. House confirmed that "Rite Aid does not have a license for any advertising for the fonts," and PureRED's previous desktop license did not include "any extended licensing for Rite Aid."  House provided estimates for different possible licenses for Rite Aid's use.   PureRED again asked whether the estimates "include usage of the font in the Rite Aid logo," and House confirmed that it did *not* include logo usage, offering to provide an estimate.  House did not know the extent of Rite Aid's proposed use at the time.

37.     On March 30, 2020, PureRED confirmed the terms of the licenses it would purchase for Rite Aid and represented that it no longer sought a "[l]ogo license" because that would be "covered by another agency that created [the logo]."   House would later learn that this representation was false.

38.     In March 2020, PureRED entered into two license agreements with House on behalf of Rite Aid, identifying "Rite-Aid Corporation" as the licensee. *See* Exs. B, C.

39.     The first license granted Rite Aid a limited license for use of certain Neutraface fonts for "Digital/Social Media/Web Advertising" in connection with Rite Aid drugstores ("Rite Aid Digital License"). These types of uses generally involve email, social media websites, online advertising on search engines, banner ads on mobile, or web sites and affiliates programs. The term of the license was limited to one year (3/31/2020 to 3/30/2021), and the license limited Rite Aid's rights to those "expressly provided in this Agreement," affirmatively prohibiting other uses. Ex. C ("All rights not granted by this license are expressly reserved by Licensor. Licensee shall not . . . engage in any unauthorized use of the Fonts or Font Data.").

40.     The second license granted Rite Aid a limited license for use of certain Neutraface fonts for "Print/POS [point of sale]/Signage Advertising" in connection with Rite Aid drugstores ("Rite Aid Print License"). These types of uses generally involve advertising materials used at retail points-of-sale and elsewhere to promote a certain product or assortment. This license has a five-year term (3/31/2020 to 3/30/2025) and limits Rite Aid's rights in the same way as the Rite Aid Digital License. Ex. B ("This Agreement does not grant to Licensee any right, title or interest in or to the font and/or font data, other than the grant of rights expressly provided in this Agreement. All rights not granted by this license are expressly reserved by the Licensor. Licensee shall not . . . engage in any unauthorized use of the Fonts or Font Data."). Among other things, the license for "Signage Advertising" does not include the use of Neutraface in the logo on exterior signs.

41.     At first, House was pleased that Rite Aid had selected Neutraface for use in its drugstores. But House has since learned that Rite Aid's use of Neutraface seemingly started before

the license negotiations started and then breached the terms of the license agreements that were eventually signed.

### Rite Aid's Unauthorized Use of Neutraface

42.     Unknown to House, at the same time PureRED was negotiating these limited licenses on behalf of Rite Aid for use of Neutraface, Rite Aid was about to announce its $700,000,000 enterprise-wide rebranding project, which specifically focuses on the new logo. *See* https://www.pennlive.com/life/2020/03/this-brand-relaunch-is-far-more-than-a-new-logo-rite-aid-plans-to-spend-700-million.html.   Through this rebranding, Rite Aid hoped to expand its customer-base, targeting Gen X and millennial women, and soften its look.   *See* https://madebysway.com/articles/rite-aid-unveils-brand-refresh-and-new-store-layout/.       The design element at the center of this colossal rebrand was House's Neutraface:



| Rite Aid Logo | Neutraface Text Demi |
|:---:|:---:|
| R | R |
| I | I |
| T | T |
| E | E |
| A | A |
| I | I |
| D | D |

43.     Upon information and belief, work on this logo ("New Rite Aid Logo") began no later than December 2019.   *See*   https://www.pilotonline.com/business/vp-bz-sway-riteaid-20200825-7c3z53d2rjc2pafncydwpbc4gi-story.html.

44.     Upon information and belief, Rite Aid hired the advertising and marketing agencies Burns Group and Sway to work on Rite Aid's rebrand and create the New Rite Aid Logo.   *See* https://www.burnsgroupnyc.com/riteaidrebrand   ("Rite  Aid  is  a  ubiquitous  brand  and neighborhood pharmacy that had lost its way in a sea of category sameness. We joined RiteAid during a very ambitious period, aimed at fully reimagining the brand's place in the world. The

strategic transformation took the brand from dusty pharmacy to holistic health and wellness and [Burns Group] came in to bring that to life at every touchpoint. Our design approach touches everything from identity applications to in-store navigation, shopper experience, trucks, outdoor, website, shopping bags, collateral, OOH, social and more.") and https://madebysway.com/work/#ra-corporate-rebranding/ ("We partnered with Rite Aid to create a new logo for their first rebrand in more than four decades, aligning the brand with their new position as a wellness company.").

45.   Upon information and belief, Burns Group and Sway worked on "hundreds, if not thousands, of variations" on the New Rite Aid Logo, using "[t]housands of consumer data points" to find the ideal logo for Rite Aid's rebrand before deciding on the version displayed above. *See* https://www.pilotonline.com/business/vp-bz-sway-riteaid-20200825-7c3z53d2rjc2pafncydwpbc4gi-story.html.

46.   Rite Aid first contacted Sway in or around November 2019 regarding a brand design project related to one of its prescription drug programs.  Approximately two weeks later, Rite Aid and Sway began discussing Sway's involvement in Rite Aid's global brand redesign.

47.   On December 5, 2019, Rite Aid and Sway entered into a Mutual Confidentiality Agreement that was effective for a term of two years.  Ex. D (Sway Mutual Confidentiality Agreement).  This agreement governed during the time Sway performed work for Rite Aid, including Sway's work on the Rite Aid rebranding.  By this agreement, Sway and Rite Aid agreed to share confidential information because they were "contemplating entering and/or entering into a business relationship."   The Mutual Confidentiality Agreement contained choice of law provisions by which Sway agreed that Pennsylvania law was the governing law of the agreement and consented to venue in Pennsylvania.

48.     During this initial phase of Rite Aid and Sway's business relationship, Sway communicated directly with Rite Aid executives working at Rite Aid's Pennsylvania headquarters, including its Chief Marketing and Merchandising Officer and Director of Marketing.  In December 2019, Rite Aid employees met virtually with Sway to provide information about the scope of Sway's work and gave Sway the "green light" to begin work on the New Rite Aid Logo.  Upon information and belief, at this meeting Rite Aid introduced Sway to its consultant located in New York ("the New York Consultant") who was working with Rite Aid to coordinate certain aspects of its global brand redesign.

49.     Sway completed three rounds of design work on the New Rite Aid Logo, sending proposals to both Rite Aid and the New York Consultant.  Upon information and belief, Rite Aid employees based in Pennsylvania engaged with Sway throughout the design process—both directly and through the New York Consultant—providing feedback and direction that Sway incorporated into subsequent design proposals.

50.     For example, on or around December 13, 2019, Sway provided the first design presentation to Rite Aid's Director of Marketing.  The Director of Marketing responded on December 16, 2019, requesting a call with Sway to "walk [them] through" the presentation.  Upon information and belief, Sway and Rite Aid participated in an online video call later that day, after which Sway and Rite Aid exchanged additional email communications to agree upon a deadline for the next round of design work.  These communications to Rite Aid employees in Pennsylvania continued through the course of Rite Aid and Sway's business relationship.

51.     On or around February 6, 2020, the New York Consultant sent Sway Rite Aid's instructions regarding the font Rite Aid selected for its rebranding: Neutraface.  Understanding that Rite Aid was dictating use of Neutraface in the New Rite Aid Logo, Sway immediately logged

on to House's website, paid for House's standard Desktop License, agreed to the terms of that license, downloaded House's Neutraface font software, and used House's software to generate the typeface used in the New Rite Aid Logo.  *See* Ex. J (Sway Neutraface Invoice).  At this point, Sway's work for Rite Aid no longer included work on typefaces or type treatments, as they understood the font selection had been completed by Rite Aid's internal creative team.  Sway focused instead on pairing Rite Aid's chosen font—Neutraface—with various logo graphical design options.

52.    Upon information and belief, Rite Aid chose to use Neutraface as the font for its logo as a result of logo presentations that were previously created by Burns Group using House's Neutraface font software.  Burns' Groups use of the font software was either unlicensed or in violation of licenses it had obtained.

53.    On or around February 17, 2020 Sway sent the New York Consultant the final New Rite Aid Logo, incorporating the "RITE AID" typeface Sway generated using House's Neutraface font software.  Upon information and belief, the New York Consultant then provided the New Rite Aid Logo to Rite Aid.

54.    Upon information and belief, only *after* Rite Aid selected the New Rite Aid Logo, PureRED began negotiating with House regarding Rite Aid's use and its own use of Neutraface. PureRED later entered into its own Desktop License Agreement for House's Neutraface Font Software in or around May 2020.  *See* Ex. F.  During the course of these negotiations, PureRED confirmed numerous times, including by email on March 17, 2020, that it produces all creative on Rite Aid's behalf.

55. Upon information and belief, the "creative" PureRED produced included print pieces and online advertising that incorporated the New Rite Aid Logo that contained Neutraface glyphs generated by PureRED's use of the Neutraface Font Software.

56. On March 30, 2020, PureRED acknowledge by email that a separate logo license would be needed to use glyphs in a logo, and PureRED indicated that the license had been obtained by another agency. That was incorrect, and no such license was procured by any party on Rite Aid's behalf. Whether the Rite Aid logos (and the Neutraface glyphs therein) were generated through the use of House's font software by PureRED or by a third party, PureRED's use of the New Rite Aid Logo in producing advertising violated its license with House under which it agreed not to use glyphs generated by the font software in a logo.

### The Vast Scope of Rite Aid's Use of Neutraface

57. Upon information and belief, Rite Aid prominently uses the New Rite Aid Logo featuring Neutraface in connection with its product packaging, in-store signage, store exteriors, broadcast and TV advertising, and its mobile app, among other uses:










58.     Upon information and belief, bombarded with appearances of the New Rite Aid Logo and other unauthorized uses of the font in signs, commercials, and even on their prescriptions, Rite Aid customers and the general public are intentionally being conditioned to see House's Neutraface and immediately and exclusively associate it with Rite Aid.  Rite Aid has usurped the value of House's proprietary font design to build its own new brand identity.

59.     Rite Aid has repeatedly emphasized the importance of their rebrand to its business, and specifically the New Rite Aid Logo:

- "Customers will soon take notice as **the look and feel of our stores is being refreshed**, our merchandising mix evolves to an assortment that best

supports whole health" – Jim Peters, Rite Aid Chief Operating Officer. *See* https://www.retaildive.com/news/rite-aid-leans-on-pharmacists-in-rebranding-effort/588652/ (emphasis added).

- "The brand refresh also includes **a new brand identity (logo)** that is rolling out across the chain."  Press Release, "Rite Aid Unveils Vision for the Future of Retail Pharmacy." *See* https://www.businesswire.com/news/home/20201109005400/en/ (emphasis added).

- "Rite Aid's Director of Public Relations, Chris Savarese, said **passersby will notice the rebranding on the facade of the stores**." *See* https://www.starbeacon.com/news/local_news/rite-aid-to-spend-700-million-rebranding-stores/article_1fe4999e-cd37-56e3-83a0-e915787023c0.html (emphasis added).

- "I want to recognize that **our existing brand is outdated**." – Heyward Donigan, Rite Aid Chief Executive Officer. *See* https://www.pennlive.com/life/2020/03/it-is-a-new-day-at-rite-aid-rite-aid-unveils-new-logo.html (emphasis added).

- "On March 16, 2020, we announced our new strategic plan and initiatives, named 'RxEvolution', which include significant rebranding, merchandising, marketing, integration and operational initiatives, in both our Retail Pharmacy and Pharmacy Services segments. **The execution of these overarching initiatives will result in the reintroduction of our trusted and iconic Rite Aid brand to a new generation of consumers, maintain relevance in an ever changing marketplace**, and thrive as a significant health care services company with a retail footprint.  Our initiatives are focused on three primary areas, i) to become the dominant mid-market pharmacy benefit manager (PBM), ii) to unlock the value of our pharmacists, and iii) **to renew our retail and digital experience** . . . **Rite Aid is re-branding with a new logo to signal this bold change in pharmacy and retail**."  Rite Aid Corporation Form 10-K For the Fiscal Year Ended February 29, 2020 (emphasis added).

60.   Upon information and belief, Rite Aid has used Neutraface to enhance and remake its brand identity, attract new customers, and "maintain relevance in an ever-changing marketplace" in order to "thrive."

## **The License Agreements**

61.   Rite Aid's extensive use of the New Rite Aid Logo was unauthorized and prohibited.

62.     Upon information and belief Burns Group and Sway engaged in unauthorized use of the Neutraface family of fonts to create the New Rite Aid Logo on Rite Aid's behalf.

63.     Sway purchased certain Neutraface fonts for desktop use on February 6, 2020, agreeing to House's Desktop License Agreement ("Sway Desktop License"). *See* Ex. J; Ex. A. Sway purchased this license because of the instruction it received from Rite Aid to incorporate Neutraface into the logo designs it had created for Rite Aid's global brand redesign, despite the fact that the license agreement specifically prohibits the use of the font in a logo.

64.     Upon information and belief, Burns Group did not secure *any* licenses for use of Neutraface until July 22, 2020.   On July 22, 2020, Burns Group purchased certain Neutraface fonts for desktop use, agreeing to House's Desktop License Agreement ("Burns Desktop License"). *See* Ex. I; Ex. A.   Burns Group's seeming attempt to cover its past unlicensed use was not only untimely, but it also prohibited the use Burns made of the font: in a logo.  *See* Ex. A.

65.     This prohibited use of Neutraface had already occurred and has continued occurring, as Burns Group and Sway created the New Rite Aid Logo on Rite Aid's behalf.

66.     As described in Paragraphs 38-40 above, the Rite Aid Print License and Rite Aid Digital License grant very limited rights to use certain Neutraface fonts in connection with, respectively, digital, social media, and web advertising and print, point of sale, and signage advertising.  All other uses are strictly prohibited.  *See* Exs. B, C.   In other words, unlicensed and prohibited use of Neutraface includes, but is not limited to: consumer products, product packaging, broadcast and TV advertising, and, of course, use in connection with logo or brand identity.  Upon information and belief, Rite Aid has engaged in ***all*** of these prohibited uses and has done so extensively.

67.     Further, upon information and belief, even though the Rite Aid Digital License expired on March 30, 2021, Rite Aid has continued its extensive use of the New Rite Aid Logo in connection with digital, social media, and web advertising:



*See* https://www.instagram.com/riteaid/channel/?hl=en (last visited on December 11, 2021).



*See* https://www.riteaid.com/pharmacy (last visited on December 11, 2021)

This continued use after the conclusion of the license period is strictly prohibited.  *See* Ex. C (expressly reserving all rights not granted and prohibiting licensee (Rite Aid) from engaging in unauthorized use).

68.    Upon information and belief, in a belated attempt to cover up this wide scope of unauthorized uses, PureRED purchased additional Desktop Licenses for itself and on behalf of Rite Aid in May 2020 (respectively, the "PureRED Desktop License" and "Rite Aid's First Desktop License").  *See* Ex. A (House's Desktop License); Ex. F; Ex. G.  A Rite Aid employee purchased an additional Desktop License in November 2020, well after Rite Aid's extensive use of the New Rite Aid Logo began ("Rite Aid's Second Desktop License").  *See* Ex. H.  However, by purchasing certain Neutraface fonts for desktop use, PureRED and Rite Aid agreed to the terms in House's Desktop License, which ***expressly prohibits*** use of Neutraface "[i]n a logo."  *See* Ex. A.

69.    Other expressly prohibited uses include "[d]istribution of the font data to any third party" and "product for sale, product packaging, digital/social media/web advertising, print/POS advertising, and/or tv advertising."  Ex. A.  That is, the Rite Aid and PureRED Desktop licenses did not permit—and indeed, expressly prohibited—use of Neutraface in the New Rite Aid Logo and any display of that logo on products, product packaging, digital media, social media, web advertising, and TV advertising, among other prohibited uses.

70.    There is no dispute that these uses of Neutraface had already occurred and have continued occurring, as Rite Aid's subsidiary applied for and registered trademarks for the New Rite Aid Logo, and Rite Aid has extensively used the New Rite Aid Logo throughout its stores, on its products, and in its advertising.

71.     Rite Aid also falsely and misleadingly claims Neutraface as its own.  Rite Aid requires viewers of its website to acknowledge that the content on its website—expressly including the "typefaces"—are "proprietary" and these rights are "valid and protected in all forms."  *See* https://www.riteaid.com/legal/online-store-terms-conditions ("You acknowledge that the Site contains information, data, software, photographs, graphics, videos, text, images, **typefaces**, sounds, and other material (collectively 'Content') that are protected by copyrights, trademarks, or other proprietary rights, and that these rights are valid and protected in all forms, media and technologies existing now or hereinafter developed. All Content is copyrighted as a collective work under the U.S. copyright laws, and we own a copyright in the selection, coordination, arrangement, and enhancement of such Content.") (emphasis added).  As Rite Aid agreed in its Desktop License agreements, the typeface Rite Aid claims for itself and admits is proprietary **belongs to House**.

72.     Rite Aid also makes false and misleading consumer-facing claims about its ownership of its logo incorporating Neutraface.  For example, Rite Aid's website states that all "images, graphics, [and] logos" on the website, including the New Rite Aid Logo, are "subject to trademark, service mark, trade dress, copyright and/or other intellectual property rights or licenses held by Rite Aid or one of its affiliates or by third parties who have licensed their materials to us." *See* https://www.riteaid.com/legal/terms-conditions.

73.     Rite Aid makes similar false and misleading consumer-facing statements concerning its ownership rights in its logo in its online store terms and conditions.  *See* https://www.riteaid.com/legal/online-store-terms-conditions ("All of the Content on the Site is subject to trademark, service mark, trade dress, copyright and/or other intellectual property rights or licenses held by Rite Aid Online Store, or one of its affiliate companies or by third parties who

have licensed their materials to us.  This includes but is not limited to the RITE AID, RITE AID Plus Design, RITE AID ONLINE STORE and 1-800-RITE AID trademarks and service marks owned by the Rite Aid Online Store and its affiliates.").

74.     Upon information and belief, Rite Aid is also using Neutraface with affiliates who are not licensees.  The Rite Aid Desktop Licenses are limited to the licensed entity.  *See* Ex. A. The Rite Aid Print License and Rite Aid Digital License were expressly limited to uses "in connection with Rite-Aid drugstores."  Upon information and belief, Rite Aid has also made unauthorized and prohibited uses of Neutraface in connection with its charitable foundation, which is a separate entity and not a Rite Aid "drug store:"



75.     In 2022, Rite Aid rebranded its charitable foundation as the Rite Aid "Healthy Futures" charity to reflect its evolving focus on health, wellness, race and equity for underserved populations.  Upon information and belief, Rite Aid hired the creative agency Periscope for this rebrand.  *See*   https://www.periscope.com/news/periscope-rebrands-rite-aid-healthy-futures-charity/.  Rite Aid, working with Periscope, made additional unauthorized and prohibited uses of Neutraface in connection with it's the rebranding of its public charity, now known as Healthy Futures, which is a separate charitable, tax-exempt 501(c)(3) public charity and not a Rite Aid "drug store:"



House Industries' Neutraface Font

76.     Upon information and belief Rite Aid has also made unauthorized and prohibited uses of Neutraface in connection with "Rite Aid Performance Media," which likewise is not Rite Aid "drug store."  Instead, Rite Aid Performance Media is a separate partnership between Rite Aid and Quotient—a digital promotions, media, and analytics firm—to build value for both brands by allows Rite Aid's brands and advertisers to directly target promotions to Rite Aid's digital customers:

House Industries'
Neutraface Font



**The "Rite Aid Rewards" Logo**

77.     Rite Aid's extensive unauthorized use of Neutraface also includes its use of Neutraface in the logo for its recently-launched rewards program (the "Rite Aid Rewards Logo"). Upon information and belief, Rite Aid created the Rite Aid Rewards Logo in-house and without the use of a creative agency intermediary:



House Industries' Neutraface Font

78.     In or around December 2021, Rite Aid once again engaged Sway for design services, including designing a logo for a new rewards program.

79.     On or around February 3, 2022, Rite Aid and Sway executed a Master Services Agreement (MSA) in connection with this work, which specified that the work involved "develop[ing] design concepts based on specifics included in the Statement of Work (the 'SOW') . . . including but not limited to naming and visuals for loyalty program." Ex. E (Master Services Agreement). Like the previous agreements between Rite Aid and Sway, the MSA included a choice of law provision and forum selection clause providing that disputes between the parties must be resolved under Pennsylvania Law and in Pennsylvania courts.

80.     Sway developed preliminary logo examples for Rite Aid, none of which used Neutraface and none of which incorporated the New Rite Aid Logo. However, instead of adopting one of Sway's designs, Rite Aid took the design in house.

81.     Upon information and belief, Rite Aid's own in-house creative team developed Rite Aid Rewards Logo, including the design of the graphical components and the "Rite Aid" text in

Neutraface, which was incorporated into the logo after Rite Aid generated the glyphs using House Industries' Neutraface software to replicate the same appearance Sway created for Rite Aid in the New Rite Aid Logo:

   

82.    On no later than February 27, 2022, the Rite Aid Rewards webpage, www.riteaid.com/rewards, was updated to include the new Rite Aid Rewards Logo. *See* Ex. K (https://web.archive.org/web/20220227153700/riteaid.com/rewards):





83.     The next day, on February 28, 2022, Rite Aid issued a press release lauding the new Rite Aid Rewards program as "a new customer loyalty program that makes it easier for more customers to engage and save." (https://investors.riteaid.com/news/news-details/2022/Rite-Aid-Unveils-Rite-Aid-Rewards--A-New-Loyalty-Program-That-Reaches-More-Customers-and-Provides-Additional-Ways-to-Save-on-Products-to-Support-Their-Whole-Health/default.aspx).

84.     Upon information and belief, Rite Aid engaged in unauthorized use of Neutraface font and font software through the creation of the Rite Aid Rewards logo, after it agreed to the terms of the Desktop agreement, which specifically prohibits the use of Neutraface "[i]n a logo." *See* Ex. A.

## House's Attempts at Resolution

85.     When House first learned about Rite Aid's extensive and unauthorized use and discovered that PureRED's representation that a "logo license" was "covered by another agency that created [the logo]" was false, it attempted to work with PureRED and Rite Aid to reach a resolution.

86.     For months, House sought additional information from Rite Aid to try to provide pricing for all unlicensed usage, including Rite Aid's unlicensed usage of Neutraface in its logo. Rite Aid confirmed that it needed usage for "Broadcast (logo)," "Logo/Identity," "Promotional Marketing Materials," and "TV advertising." Despite multiple attempts at entering into additional licenses to cover Rite Aid's extensive unauthorized uses, Rite Aid eventually stopped responding to House.

87.     As a result of the foregoing breaches of contract, unfair competition, and unjust enrichment, House has suffered and will continue to suffer irreparable harm and monetary harm in an amount to be determined at trial.

## CLAIMS FOR RELIEF

### COUNT I
**(Breach of Contract)**
**(Against Rite Aid, PureRED, Burns Group, and Sway)**

88.     House repeats and realleges the allegations contained in paragraphs 1 through 87 above as if fully set forth herein.

89.     The Rite Aid Print License is a valid, binding contract between House and Rite Aid.

90.     The Rite Aid Print License expressly reserves all rights not granted by the license (i.e., all rights other than use of certain Neutraface fonts for print, point of sale, and signage advertising in connection with Rite Aid drugstores) and prohibits the licensee, Rite Aid, from engaging in unauthorized use of Neutraface.  Ex. B.

91.     Upon information and belief, Rite Aid has engaged in unauthorized uses of Neutraface, including in connection with consumer products, product packaging, mobile app use, broadcast and TV advertising, and, in connection with the New Rite Aid Logo.

92.     Rite Aid's actions constitute a breach of the terms of the Rite Aid Print License.

93.     As a direct and proximate cause of Rite Aid's conduct, House has suffered monetary damages, including loss of the present and future licensable value of Neutraface, in an amount to be determined at trial.

94.     The Rite Aid Digital License is a valid, binding contract between House and Rite Aid.

95.     The Rite Aid Digital License expressly reserves all rights not granted by the license (i.e., all rights other than use of certain Neutraface fonts for digital, social media, and web advertising in connection with Rite Aid drugstores) and prohibits the licensee, Rite Aid, from engaging in unauthorized use of Neutraface.  Ex. C.

96.     The term of the license expired on March 30, 2021.  Ex. C.

97.     Upon information and belief, during the term of the contract Rite Aid engaged in unauthorized uses of Neutraface, including in connection with consumer products, product packaging, mobile app use, broadcast and TV advertising, and, in connection with the New Rite Aid Logo.

98.     As a direct and proximate cause of Rite Aid's conduct, House has suffered monetary damages, including loss of the present and future licensable value of Neutraface, in an amount to be determined at trial.

99.     Rite Aid's First Desktop License is a valid, binding contract between House and Rite Aid.

100.    Rite Aid's First Desktop License expressly prohibits use "[i]n a logo." *See* Ex. A.

101.    Rite Aid's First Desktop License expressly prohibits use in connection with "[a]ny product for sale, product packaging . . . and/or tv advertising." *See* Ex. A.

102.    Upon information and belief, Rite Aid breached Rite Aid's First Desktop License by continuing to engage in unauthorized uses of Neutraface, including using it in connection with the New Rite Aid Logo, on product packaging, and in television advertising, after the agreement was signed.

103.    As a direct and proximate cause of Rite Aid's conduct, House has suffered monetary damages in an amount to be determined at trial.

104.    Rite Aid's Second Desktop License is a valid, binding contract between House and Rite Aid.

105.    Rite Aid's Second Desktop License expressly prohibits use "[i]n a logo." *See* Ex. A.

106.   Rite Aid's Second Desktop License expressly prohibits use in connection with "[a]ny product for sale, product packaging . . . and/or tv advertising." *See* Ex. A.

107.   Upon information and belief, Rite Aid breached Rite Aid's Second Desktop License by continuing to engage in unauthorized uses of Neutraface, including using it in connection with the New Rite Aid Logo, on product packaging, and in television advertising after the agreement was signed.

108.   Upon information and belief, Rite Aid also breached Rite Aid's Desktop Licenses by using Neutraface to create the Rite Aid Rewards Logo as a logo for its customer loyalty program.

109.   Upon information and belief, Rite Aid has also engaged in unauthorized uses Neutraface in connection with its Rite Aid Performance Media logo for its affiliate marketing program.

110.   Upon information and belief, Rite Aid has also engaged in unauthorized uses of Neutraface in connection with the Rite Aid Foundation and Healthy Futures logos for its separate charitable organization.

111.   As a direct and proximate cause of Rite Aid's conduct, House has suffered monetary damages in an amount to be determined at trial.

112.   The PureRED Desktop License is a valid, binding contract between House and PureRED.

113.   The PureRED Desktop License expressly prohibits use "[i]n a logo." *See* Ex. A.

114.   The PureRED Desktop License expressly prohibits use in connection with "[a]ny product for sale, product packaging, digital/social media/web advertising, print/POS advertising, and/or tv advertising." *See* Ex. A.

115.    Upon information and belief, PureRED breached the PureRED Desktop License by continuing to engage in unauthorized uses of Neutraface, including by using Neutraface and the Neutraface Software to prepare materials for Rite Aid that incorporate Neutraface in the New Rite Aid Logo, after the agreement was signed.

116.    Upon information and belief, PureRED also breached the PureRED Desktop License by reproducing the Rite Aid logo, which utilizes glyphs that were produced by the Neutraface font software "in a logo," to produce signage and advertising material for Rite Aid. This violated the license under which PureRED agreed not to use glyphs produced by the font software in a Logo or in digital, social media, web, print, point-of-sale, or television advertising.

117.    As a direct and proximate cause of PureRED's conduct, House has suffered monetary damages in an amount to be determined at trial.

118.    The Burns Desktop License is a valid, binding contract between House and Burns Group.

119.    The Burns Desktop License expressly prohibits use "[i]n a logo."  *See* Ex. A.

120.    Upon information and belief, Burns Group breached the Burns Desktop License by continuing to engage in unauthorized uses of Neutraface, including using it in connection with the New Rite Aid Logo, after the agreement was signed.

121.    As a direct and proximate cause of Burns Group's conduct, House has suffered monetary damages in an amount to be determined at trial.

122.    The Sway Desktop License is a valid, binding contract between House and Sway.

123.    The Sway Desktop License expressly prohibits use "[i]n a logo."  *See* Ex. A.

124.    Sway breached the Sway License by continuing to engage in unauthorized uses of Neutraface, including using it to create the New Rite Aid Logo, after the agreement was signed.

125.     As a direct and proximate cause of Sway's conduct, House has suffered monetary damages in an amount to be determined at trial.

### COUNT II
**(Unjust Enrichment Under Pennsylvania Common Law)**
**(Against Rite Aid, PureRED, Burns Group, and Sway)**

126.     House repeats and realleges the allegations contained in paragraphs 1 through 125 above as if fully set forth herein.

127.     This claim is for unjust enrichment in violation of the common law of the Commonwealth of Pennsylvania.

128.     By using House's proprietary font in the New Rite Aid Logo, the Rite Aid Rewards Logo, the Rite Aid Foundation Logo, the Healthy Futures Logo, and the Rite Aid Performance Media Logo as part of its brand identity, in connection with consumer products, product packaging, mobile app use, and broadcast and TV advertising without obtaining and paying for licenses for those uses, Rite Aid has received and has retained a benefit from House.

129.     Upon information and belief, Rite Aid understood that it received that benefit.

130.     Under these circumstances, where Rite Aid has engaged in extensive unauthorized use of House's proprietary font without obtaining a license for that use, it would be unjust and inequitable to allow Rite Aid to retain that benefit.

131.     Upon information and belief, Rite Aid has made, and will continue to make, substantial profits and gain from its use of Neutraface, to which Rite Aid is not entitled at law or in equity.

132.     Upon information and belief, Rite Aid has been unjustly enriched by sales that Rite Aid would not have made but for its unlawful use of House's proprietary font.

133.    By using Neutraface to create a logo for Rite Aid and/or preparing materials incorporating Neutraface without obtaining and paying for a license from House, PureRED, Burns Group, and Sway have received and retained a benefit from House.

134.    Upon information and belief, PureRED, Burns Group, and Sway understood that they received that benefit.

135.    Since PureRED, Burns Group, and Sway accepted and retained the benefit of using House's proprietary font without licensing its use, it would be unjust and inequitable to allow PureRED, Burns Group and Sway to retain that benefit.

136.    Upon information and belief, PureRED, Burns Group and Sway have each been unjustly enriched by using Rite Aid's proprietary font without paying the price of a license.

137.    PureRED, Burns Group, and Sway's conduct has caused, and is causing, damage to House, including monetary damages in an amount to be determined at trial.

<u>**COUNT III**</u>
**(False Designation of Origin – 15 U.S.C. § 1125(a))**
**(Against Rite Aid)**

138.    House repeats and realleges the allegations contained in paragraphs 1 through 137 above as if fully set forth herein.

139.    This claim is for false designation of origin in violation of § 1125(a) of the Lanham Act.

140.    House owns exclusive rights in the font software used to create Neutraface typeface and any resulting glyphs.

141.    House structures its licensing regime to prohibit licensees from using its fonts in logos because it is critical to the value of the fonts that they not become identified or specifically

associated with one particular company—other than itself insofar as its customers know to work with House to use attractive and innovative fonts like Neutraface.

142.    Upon information and belief, Burns Group and Sway used Neutraface without authorization to create the New Rite Aid Logo for Rite Aid.

143.    Since its unauthorized creation, Rite Aid has used the New Rite Aid Logo extensively in United States commerce on signage, in advertising, on packaging and in numerous other ways in a campaign that was expressly designed to create and reinforce an association between the Neutraface logo and Rite Aid, thus improperly deceiving consumers into believing that the Neutraface font is affiliated or associated exclusively with Rite Aid.

144.    Through Rite Aid's extensive use of the New Rite Aid Logo, Rite Aid is deceiving customers into believing that House's proprietary font design is exclusively associated with Rite Aid.   Upon information and belief, consumers are becoming accustomed to encountering Neutraface on Rite Aid products, Rite Aid packaging, Rite Aid advertisements, and in Rite Aid stores.

145.    Through Rite Aid's extensive use of Neutraface in the New Rite Aid Logo, Rite Aid misrepresents that it, not House, is the source of Neutraface or goods or services bearing Neutraface.

146.    Rite Aid's website furthers the deception insofar as it makes a direct representation that all "images, graphics, [and] logos" on the website are "subject to trademark, service mark, trade dress, copyright and/or other intellectual property rights or licenses held by Rite Aid or one of its affiliates or by third parties who have licensed their materials to us."   *See* https://www.riteaid.com/legal/terms-conditions. This misrepresentation further suggests that the Neutraface font used in Rite Aid's graphics and logos are exclusively associated with Rite Aid.

147.     House has never consented to Rite Aid's use of Neutraface in the New Rite Aid Logo.

148.     Upon information and belief, Rite Aid's use of House's proprietary font, as complained of herein, and false statements of ownership in the New Rite Aid logo is likely to cause confusion, to cause mistake, or to deceive as to the affiliation, connection, or association of Rite Aid with House and/or as to the origin, sponsorship, or approval by House of Rite Aid's goods, services, or commercial activity.

149.     As a direct and proximate result of Rite Aid's violations of 15 U.S.C. § 1125, House has been and will continue to be damaged.

150.     Upon information and belief, Rite Aid has realized, and continues to realize, substantial revenues, profits, and other benefits rightfully belonging to House as a result of its wrongful conduct.

151.     Rite Aid's conduct is causing and will continue to cause House to suffer irreparable harm and, unless Rite Aid is restrained, House will continue to be so damaged, because it has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, House respectfully prays that this Court:

A.     Enter judgment that: (i) Rite Aid, PureRED, Burns Group, and Sway have breached their license agreements; (ii) Rite Aid, PureRED, Burns Group, and Sway have been unjustly enriched; (iii) Rite Aid has violated 15 U.S.C. § 1125(a); and that all of the foregoing wrongful activities by Defendants were willful and/or constitute and exceptional case under 15 U.S.C. § 1117;

B.     That this Court, pursuant to 15 U.S.C. § 1116 and the Court's equitable power, enjoin Rite Aid, its employees, agents, servants, and all in privity or acting in concert with any of them, from (i) using House's Neutraface font as part of its logo; (ii) claiming any exclusive association between the Neutraface font design and Rite Aid as source; and continuing to use Neutraface for "Digital/Social Media/Web Advertising" after the term of its license;

D.     That this Court, pursuant to 15 U.S.C. § 1118, enter an order that all labels, signs, prints, packages, wrappers, receptacles, and advertisements in the possession of the defendant bearing the unauthorized logo be delivered up and destroyed;

E.     That this Court require an accounting of profits by Rite Aid;

F.     That this Court award House Rite Aid profits, House's actual damages, enhanced damages, exemplary damages, costs, prejudgment and post judgment interest, and reasonable attorneys' fees pursuant to at least 15 U.S.C. § 1117 and Pennsylvania common law; and

G.     That this Court award House such other and further relief that it deems just and proper.

## **JURY DEMAND**

House demands a trial by jury of all claims so triable.

****

Dated:   December 8, 2022                    Respectfully submitted,

                                             ORRICK, HERRINGTON & SUTCLIFFE LLP

                                             By: */s/ Mark S. Puzella* _____

>     Kelly A. Williams
>     kelly.williams@orrick.com
>     ID 74872
>     2121 Main St.
>     Wheeling, WV 26003
>     Telephone: (304) 231-2500
>
>     Mark Puzella (*pro hac vice*)
>     mpuzella@orrick.com
>     MA 644850
>     R. David Hosp (*pro hac vice*)
>     dhosp@orrick.com
>     MA 634091
>     222 Berkeley Street, Suite 2000
>     Boston, MA 02116
>     Telephone: (617) 880-1919
>     Fax: (617) 880-1801
>
>     Lindsay Rindskopf (*pro hac vice*)
>     lrindskopf@orrick.com
>     NY 5766985
>     51 W 52nd Street
>     New York, NY 10019
>     Telephone: (212) 506-5000
>     Fax: (212) 506-5151
>
>     *Counsel for Plaintiff*