IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **BRAND DESIGN COMPANY, INC. d/b/a HOUSE INDUSTRIES,**<br>                 **Plaintiff,**<br><br>v.<br><br>**RITE AID CORPORATION, SWAY CREATIVE LABS, LLC, GA COMMUNICATIONS, INC. d/b/a PURERED CREATIVE, LLC, AND BURNS GROUP NYC, LLC,**<br>                 **Defendants.** | CIVIL ACTION<br><br><br><br>NO.  22-1174 |

### MEMORANDUM OPINION

Brand Design Company Inc. d/b/a House Industries ("House"), a font software designer, brings this action against Rite Aid Corporation ("Rite Aid") and its advertising agencies (collectively, "Defendants") for improper use of House's software which produces a font called Neutraface.  Rite Aid used Neutraface in its new logo for a recent rebranding.  House seeks relief for breach of contract, unjust enrichment, and false designation of origin by Rite Aid and other Defendants.  Rite Aid has plead four counterclaims seeking declaratory judgments that: (1) there is no legally protectable trademark or trade dress interest in the Neutraface font, pursuant to 15 U.S.C. § 1125(a); (2) House abandoned any legally protectable trademark or trade dress interest in Neutraface font by naked licensing, pursuant to 15 U.S.C. § 1125(a); (3) House abandoned any trademark or trade dress in Neutraface font or those rights have become lost to genericism by House's failure to prosecute, pursuant to 15 U.S.C. § 1125(a); and, (4) House, by using its limited copyright interest in its font software to exert a monopoly over the Neutraface font, engaged in copyright misuse.  House now moves to dismiss all four of Rite Aid's counterclaims, first as improperly amended pursuant to Federal Rule of Civil Procedure 15 or, in

1

the alternative, pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction as to counterclaims one, two, and three, and pursuant to Rule 12(b)(6) for failure to state a claim as to counterclaim four. For the reasons that follow, Plaintiff's motion will be granted.

## I. BACKGROUND

### A. Factual Background

In brief, House designs fonts and software to create fonts, including one which produces a font design family called Neutraface. Would-be users of Neutraface must purchase a license to use House's software that generates the font. House offers several licenses for its font-producing software, each with different use restrictions. Rite Aid's advertising agency began working on a new logo for Rite Aid no later than December 2019. In March 2020, Rite Aid announced a business-wide rebranding with its new logo using Neutraface font. Following the rebranding announcement, one of Rite Aid's advertising agencies, and eventually Rite Aid itself, purchased various licenses from House for use of the software that produces Neutraface font. The one that Rite Aid purchased, a so-called "desktop license", provides that certain "uses of the Licensed Software and Fonts and glyphs generated thereby are expressly NOT PERMITTED," including use in a "logo" and use in "[a]ny product for sale, product packaging, digital/social media/web advertising, print/POS advertising, and/or tv advertising." House alleges that Defendants engaged in prohibited uses of the software creating "an association between House's font design and Rite Aid as source[,] . . . [which] fundamentally undermined the licensable value of Neutraface [outside] . . . Rite Aid's unauthorized uses" under its license agreements.

### B. Procedural Background

In deciding Defendants' motions to dismiss the Initial Complaint, this Court dismissed some but not of all of the counts brought by Plaintiff. Following that decision, Rite Aid filed its

First Answer to the Initial Complaint. ("First Answer"). House then moved to amend its Initial Complaint, which the Court allowed. Soon thereafter, House filed its Amended Complaint, and, on December 22, 2022 Rite Aid answered. ("Second Answer"). The next day, the Court approved a stipulation—joined by all parties—giving all Defendants a twenty-one day extension, until January 12, 2023, to answer the Amended Complaint. Without moving for leave to amend its answer, Rite Aid filed an Amended Answer, ("Third Answer"), on January 12, adding for the first time four counterclaims against House.

## II.    DISCUSSION

### A.    Procedural Challenges to the Third Answer

#### *i.    Third Answer was Properly Filed*

House first argues Rite Aid's Third Answer is procedurally improper. Specifically, House argues that Rite Aid had already filed an answer to the Amended Complaint (the Second Answer), failed to seek leave to amend its Second Answer, and should not be permitted to amend it now. Thus, House concludes, the Third Answer, and Rite Aid's counterclaims therein, should not be considered. Rite Aid pushes back, arguing that it properly amended its Second Answer as a matter of right under Rule 15(a).

Federal Rule of Civil Procedure 15(a) states "[a] party may amend its pleading once as a matter of course within . . . 21 days after serving it." Fed. R. Civ. P. 15(a); *see also W. Run Student Hous. Assocs., LLC v. Huntington Nat. Bank*, 712 F.3d 165, 171 (3d Cir. 2013) ("*W. Run Student Hous. Assocs.*"). An answer constitutes a pleading under Rule 15(a). *Long v. Wilson*, 393 F.3d 390, 400 (3d Cir. 2004) ("The plain terms of Rule 15(a) do not discriminate on the basis of type of pleading. The liberal right to amend extends to an answer to the complaint."). As Rite Aid filed its Third Answer twenty-one days after the Second Answer, it properly

amended as a matter of right under Rule 15(a).  And, where a pleading is properly amended under Rule 15(a), a party need not seek leave to amend.  *See* Fed. R. Civ. P. 15(a)(2) (requiring "[i]n all other cases, a party may amend its pleading only with opposing party's written consent or the court's leave."); *see also e.g.*, *Saunders v. Phila. Dist. Attorney's Off.*, 2013 WL 12099380, at *1 n.1 (E.D. Pa. Mar. 1, 2013), *aff'd*, 546 F. App'x 68 (3d Cir. 2013) ("Rule 15(a)[] essentially allows a party to amend its pleading as a matter of right which means that the amendment can be made without requesting permission from the opposing party or the court.").  Thus, Rite Aid need not have requested leave to amend, and its Third Answer was properly filed.

### ii.   Third Answer Properly Pled Counterclaims

House next argues the content of Rite Aid's Third Answer should be constrained or limited to: (1) contentions made in either the First Answer or the Second Answer or (2) updating any such contentions only insofar as they responded to changes House made from the Initial Complaint to the Amended Complaint.  Both would exclude Rite Aid's four counterclaims.

First, House argues Rite Aid should be prevented from adding to its Third Answer counterclaims not present in its prior answers.  Not so.  "In general, an amended pleading supersedes the original pleading and renders the original pleading a nullity.  Thus, the most recently filed amended complaint becomes the operative pleading." *Garrett v. Wexford Health*, 938 F.3d 69, 82 (3d Cir. 2019) (citing *Palakovic v. Wetzel*, 854 F.3d 209, 220 (3d Cir. 2017)); *see also W. Run Student Hous. Assocs.*, 712 F.3d at 171 ("[An amended complaint] renders [the initial complaint] of no legal effect, unless the amended complaint specifically refers to or adopts the earlier pleading."); *Holliday v. Prime Care Med.*, 414 F. Supp.3d 728, 731 (E.D. Pa. 2019) ("[A]n amended complaint, once submitted to the Court, will serve as the governing pleading in

this case because an amended complaint supersedes the prior pleading."). As House amended its Initial Complaint, all prior pleadings, including Rite Aid's answer to the Initial Complaint (the First Answer), are rendered a nullity. *Garrett*, 938 F.3d at 82. Rite Aid, then, cannot be constrained by the content of its pleadings prior to the Amended Complaint. As such, Rite Aid's Third Answer need not be limited to the content of its First Answer.

Next, House argues Rite Aid's Third Answer should be limited to addressing the changes from the Initial Complaint to the Amended Complaint or to the content of Rite Aid's initial answer to the Amended Complaint (Second Answer), thereby excluding Rite Aid's counterclaims. Yet, "Rule 15 does not limit the response only to those items that have been changed or amended." *Whitmill v. City of Phila.*, 29 F. Supp.2d 241, 247 (E.D. Pa. 1998); *see also In re Chocolate Confectionary Antitrust Litig.*, 749 F. Supp.2d 224, 232 n.6 (M.D. Pa. 2010) ("[An amended complaint] allows defendants to raise substantive arguments in a new responsive pleading irrespective of whether those contentions were raised in response to the consolidated amended complaint[.]" (citations omitted)) ("*In re Chocolate*"). "[A] party amending under Rule 15(a) may add, drop, or restate one, some, or all of the claims for relief contained in a pleading[.]" *United States v. Union Corp.*, 194 F.R.D. 223, 233 (E.D. Pa. 2000). The content of Rite Aid's Third Answer, then, need not be limited to either addressing changes House made between complaints or any of its own prior answers. Thus, Rite Aid timely filed its Third Answer and was permitted to add counterclaims not tied to changes between the complaints or present in prior pleadings.

### B. Counterclaims One, Two, and Three

#### i. Legal Standard: Rule 12(b)(1)

House next moves under Federal Rule of Civil Procedure 12(b)(1) for dismissal of Rite

Aid's first three counterclaims. Under Rule 12(b)(1), a claim may be dismissed for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1); *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012) ("*In re Schering*"). "Article III of the United States Constitution limits the scope of federal judicial power to the adjudication of 'cases' and 'controversies.' A fundamental safeguard of that limitation is the doctrine of standing. Only a party with standing can invoke the jurisdiction of the federal courts." *Const. Party of Pa. v. Aichele*, 757 F.3d 347, 356-57 (3d Cir. 2014) (citing U.S. Const. art. III, § 2 and *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). "[T]he plaintiff bears the burden of establishing the elements of standing, and each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *FOCUS v. Allegheny Cnty. Ct. of Common Pleas*, 75 F.3d 834, 838 (3d Cir. 1996) (quoting *Lujan*, 504 U.S. at 561); *see also Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007) (accord).[1]

"A declaratory judgment . . . can issue only when the constitutional standing requirements of a 'case' or 'controversy' are met." *St. Thomas--St. John Hotel & Tourism Ass'n, Inc. v. Gov't of U.S. V.I.*, 218 F.3d 232, 240 (3d Cir. 2000) (citing U.S. Const. art. III, § 2 and *Md. Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 272 (1941)); *see also* Declaratory Judgment Act, 28 U.S.C. § 2201(a) ("In a case of actual controversy . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration[.]"); *Step-Saver Data Sys., Inc. v. Wyse Tech.*, 912 F.2d 643, 646-47 (3d Cir. 1990) ("[T]he Constitution prohibits federal courts from deciding issues in which there is no 'case[ ]'

---

[1] In this instance, although House is the Plaintiff in the suit and Rite Aid a Defendant, because this motion to dismiss is with respect to Rite Aid's counterclaims, Rite Aid bears the burden to establish standing.

or 'controversy,' [and] declaratory judgments can be issued only when there is 'an actual controversy'. The discretionary power to determine the rights of parties before injury has actually happened cannot be exercised unless there is a legitimate dispute between the parties." (citations omitted)) ("*Step-Saver*").[2] Accordingly, a declaratory judgment action is only ripe if (1) the parties' interests are adverse; (2) the declaratory judgment would be conclusive; and, (3) the declaratory judgment would be of practical help or utility. *Armstrong World Indus., Inc. by Wolfson v. Adams*, 961 F.2d 405, 411-12 (3d Cir. 1992) (citing *Step-Saver*, 912 F.2d at 647); *Grasso v. Katz*, 2022 WL 4586125, at *6 (E.D. Pa. Sept. 28, 2022).

### ii. *Analysis*

House argues Rite Aid's first three counterclaims—that there is no legally protectable trademark or trade dress interest in the Neutraface font and that (even if there were) House has abandoned it by naked licensing or that any such rights are lost to genericism by House's failure to prosecute—must be dismissed because Rite Aid has no standing to bring them. More specifically, it argues there is no case or controversy in that the parties' interests are not adverse as to whether House has a trademark or trade dress interest in the Neutraface font. While its Amended Complaint does, asserts House, state a Lanham Act trademark claim in the *software that creates the Neutraface font*, it does not contain a claim for trademark in the *font* itself. And, even if it could be read to do so, House multiple times in its briefing states in so many words it

---

[2] In evaluating a Rule 12(b)(1) motion, a court must first determine whether the movant presents a facial or factual attack. *In re Schering*, 678 F.3d at 243 (*citing Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir.1977)). A facial attack "contests the sufficiency of the pleadings," and the court is limited to considering only "'the allegations of the complaint . . . in the light most favorable to the plaintiff.'" *Id.* (*quoting Gould Elec. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir.2000)); *see also Ballentine*, 486 F.3d at 810 ("Pursuant to Rule 12(b)(1), the Court must accept as true all material allegations set forth in the complaint, and must construe those facts in favor of the nonmoving party." (*citing Warth v. Seldin*, 422 U.S. 490, 501 (1975) & *Storino v. Borough of Point Pleasant Beach*, 322 F.3d 293, 296 (3d Cir. 2003))). Here, House's challenge to Rite Aid's first three counterclaims is "properly understood as [a] facial attack[] because [House] contend[s] that the [Third Answer] lack[s] sufficient factual allegations to establish standing." *In re Schering*, 678 F.3d at 243.

"is not claiming trademark rights in the Neutraface font." *See* (ECF No. 97-1 at 15 & 16); *see also* (ECF No. 105 at 6 & 8) ("House has never argued that its 'proprietary rights' are ***trademark*** rights in the Neutraface Font[.]") (emphasis original).

While Rite Aid highlights phrases in the Amended Complaint which could be read to conclude that House is asserting a trademark in the font (*e.g.* allegations discussing the font's value to House, and the use of the phrase "proprietary font design" peppered throughout the Amended Complaint),[3] in the numbered count in which House lays out its Lanham Act claim, the focus is on the software that creates Neutraface, not the font itself. Indeed, House expressly claims only "exclusive rights in the *font software used to create* Neutraface typeface and any resulting glyphs," (ECF No. 87 at ¶ 140) (emphasis added), rather than rights in the font. Given the express statements in the Amended Complaint (seen in the light of House's clear abandonment in its briefing of any possible trademark claims in the font), this Court finds that House is not making a claim for trademark or trade dress in the font. *See e.g.*, *Schuylkill Energy Res., Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997) (declining to follow "assertions [alleged in the amended complaint that] are belied by both the remaining factual allegations and the law" on a motion to dismiss).

Rite Aid gripes that insofar as House intentionally plead its Lanham Act claims in an opaque manner, it should not be allowed to walk away from a potential claim for trademark in the font now. But, House, as the Plaintiff, is "the master of the complaint" and "can make choices accordingly." *Wood v. Prudential Ins. Co. of Am.*, 207 F.3d 674, 678 (3d Cir. 2000)

---

[3] Rite Aid protests that House, having made arguments in its briefing on motions to dismiss the Initial Complaint that suggested it may be asserting a trademark claim to Neutraface font, cannot now change its mind have no traction. When House filed its Amended Complaint, it rendered all other pleadings, including arguments on the prior motion to dismiss, a nullity. *Garrett*, 938 F.3d at 82.

(citing *Caterpillar Inc. v. Williams*, 482 U.S. 386, 398-99 (1987)) (quotations omitted); *see also*, *Hereford v. Broomall Operating Co. LP*, 575 F. Supp.3d 558, 564 (E.D. Pa. 2021).  And, any opacity has now been cleared up by House's repudiation of any such claim.

In short, Rite Aid maintains that House has no trademark or trade dress interest in the Neutraface font and House is not asserting here a trademark or trade dress interest in the Neutraface font.  Thus, be it in bold, italics, or underlined, no matter how Rite Aid formats its arguments, House has fully and completely disavowed any claim to trademark rights in Neutraface font.  As such, the parties' interests are not adverse and, necessarily, there is no case or controversy.  Accordingly, any declaratory judgment issued on this point would be "an opinion advising what the law would be upon a hypothetical state of facts[,]" in that it would not address "a real and substantial controversy[.]" *Step-Saver*, 912 F.2d at 647 (quoting *Aetna Life Insurance Co. v. Haworth*, 300 U.S. 227, 240-41 (1937)).  Hence, Rite Aid's first, second, and third counterclaims shall be dismissed.[4]

### iii.   Request to Strike

Next, Rite Aid asks that if House is not pursuing trademark rights in the font, any language in the Amended Complaint which appears to allege trademark interest in Neutraface font should be stricken.  But this request—made in a responsive brief to a motion to dismiss rather than as a separate motion and which is not accompanied by any reference to the applicable rule of procedure pursuant to which a matter may be stricken from a complaint—does not

---

[4] Rite Aid spends some time citing to cases which it says supports its view that even if House's trademark claim only concerns the software it is, nevertheless, doomed.  But that argument is more properly made in the context of a properly filed motion by Rite Aid to kick out that trademark claim rather than in response to a motion by House to dismiss Rite Aid's counterclaims. As this Court already noted, whether House's theory will "survive closer scrutiny is an open question." *Brand Design Co., Inc.*, 623 F. Supp.3d at 541.  But, it is a question for another day.

comply with the procedures set forth in the Eastern District of Pennsylvania's Local Rule 7.1. As such, the request is improperly made and will not be considered.

Even so, if Rite Aid had properly filed a motion to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter[,]" under Federal Rule of Civil Procedure 12(f), its motion would have likely been denied. "[S]triking a pleading is a 'drastic remedy' to be used sparingly," *Dann v. Lincoln Nat'l Corp.*, 274 F.R.D. 139, 142 (E.D. Pa. 2011), and Rite Aid has not identified any cogent reason why it should be used here.[5]

### C. House's Motion to Dismiss Rite Aid's Fourth Counterclaim for 'Copyright Misuse'

House next moves to dismiss Rite Aid's remaining counterclaim which seeks from this Court a declaration that House, by using its limited copyright interest in its font software to exert a monopoly over the Neutraface font, engaged in copyright misuse.[6] The battle here is whether Rite Aid can assert copyright misuse as an independent claim as well as an affirmative defense. Rite Aid maintains it can. And, indeed, in other jurisdictions that may be so: But, this Court finds that the expansion is not warranted here.

Copyright misuse is an affirmative defense which "extends from the equitable principle that courts may appropriately withhold their aid where the plaintiff is using the right asserted contrary to the public interest. Misuse is not cause to invalidate the copyright or patent, but instead precludes its enforcement during the period of misuse." *Video Pipeline, Inc. v. Buena Vista Home Ent., Inc.*, 342 F.3d 191, 204 (3d Cir. 2003), as amended (Sept. 19, 2003) (citations

---

[5] By way of example, Rite Aid cites to only one case to support its request to strike: a case which is not relevant in that the court was not evaluating a motion to strike under Rule 12(f). *In re Chocolate*, 749 F. Supp.2d at 233.

[6] In a previous opinion, this Court determined typeface, like Neutraface, is not subject to copyright. *See Brand Design Co., Inc.*, 623 F. Supp.3d at 534 ("Neutraface is a typeface, and 'typeface as typeface' is a 'work[] not subject to copyright.'" (quoting 37 C.F.R. § 202.1(e))). As such, any claims to copyright or copyright misuse, to the extent that they exist, are limited to the software that produces Neutraface, not the Neutraface font itself.

and quotations omitted) ("*Video Pipeline*"); *see also* 4 Nimmer on Copyright § 13.09 (2022).

The "Third Circuit has affirmatively recognized the copyright misuse doctrine" as an affirmative defense. *FMC Corp. v. Control Sols., Inc.*, 369 F. Supp.2d 539, 580 (E.D. Pa. 2005) (citing *Video Pipeline*, 342 F.3d at 206); *see also Malibu Media, LLC v. Does 1*, 2013 WL 1702549, at *5 (E.D. Pa. Mar. 6, 2013) (relying on *Video Pipeline* to determine if and when the copyright misuse as an affirmative defense applies). While it has not specifically rejected copyright misuse as an independent claim, neither has it adopted it.

Opinions from district courts across the country illustrate that a consensus has not been reached "on whether copyright misuse can be brought as an independent claim (as opposed to as an affirmative defense) and district courts come down on both sides of the issue." *Amaretto Ranch Breedables, LLC v. Ozimals, Inc.*, 790 F. Supp.2d 1024, 1033 (N.D. Cal. 2011) (collecting and comparing cases permitting and prohibiting copyright misuse as a counterclaim or independent claim, none of which are precedential or in the Third Circuit), *Amaretto Ranch Breedables v. Ozimals Inc.*, 907 F. Supp.2d 1080, 1086 (N.D. Cal. 2012) (later dismissing the action on other grounds).

But, courts in the Third Circuit have generally rejected copyright misuse as a standalone claim. *See e.g.*, *Redbox Automated Retail LLC v. Universal City Studios LLLP*, 2009 WL 2588748, at *4 (D. Del. Aug. 17, 2009) ("Copyright misuse is not a claim but a defense, and [a litigant] may not create a justiciable claim for copyright misuse in this jurisdiction by . . . seeking declaratory relief. . . . In keeping with other courts in this Circuit, this Court will not permit Redbox to bring such a claim in this case.") (citing *Arista Records, Inc. v. Flea World, Inc.*, 356 F.Supp.2d 411, 428 (D.N.J.2005)).

There does appear to be some jurisprudential underpinning separating those courts which

11

allow copyright misuse to move ahead as a claim and those which do not. The former tend to sit in jurisdictions that generally permit "most matters of defense [to be] raised affirmatively in a declaratory judgment action, so long as there is an actual controversy." *Midwest Tape, LL v. Recorded Books*, LLC, 2010 WL 1258101, at *1 (N.D. Ohio Mar. 26, 2010). But this is not a protocol that has been embraced by courts sitting in the Third Circuit. *See Arista Recs., Inc.*, 356 F. Supp.2d at 428 ("As a preliminary matter, copyright misuse is not a claim but a defense, and Defendants may not transmute it into an independent claim merely by labeling it one for 'declaratory judgment.'"); *see also e.g., Redbox Automated Retail LLC*, 2009 WL 2588748, at *4 (finding copyright misuse as an independent claim impermissible, even when seeking declaratory relief); *Cf. Malibu Media, LLC*, 2013 WL 1702549, at *9 & 10 (dismissing copyright misuse counter for failure to state a claim). Still other courts have found such a counterclaim redundant where there is also a copyright misuse affirmative defense, as here. *See e.g., Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 269 F. Supp.2d 1213, 1225 (C.D. Cal. 2003).

Rite Aid argues that it will be placed at a litigation disadvantage if it is forced to make its copyright misuse argument only as an affirmative defense and not as a counterclaim. In actuality, if the question of whether House engaged in copyright misuse survives to trial, the standard of proof put to the jury would be exactly the same as the copyright misuse defense: preponderance of the evidence. *See* Third Circuit Model Civil Jury Instruction 1.10 (requiring proof of affirmative defenses by preponderance of the evidence); *see also e.g., United States v. Alston*, 526 F.3d 91, 95 (3d Cir. 2008) (noting that defendants have the burden of proving the affirmative defense by a preponderance of the evidence); *Green v. Parisi*, 478 F.2d 313, 315 (3d Cir. 1973) (accord); *Ramsey v. Mellon Nat. Bank & Tr. Co.*, 350 F.2d 874, 877 (3d Cir. 1965) ("[A]n affirmative defense and the burden of proving this is upon the defendant, in the same way

as I have explained to you the meaning of proof by the preponderance of the evidence.").

Accordingly, the Court not having been presented with a cogent rationale to create an independent cause of action stemming from the copyright misuse, House's motion to dismiss Rite Aid's request for a declaratory judgment premised on a copyright misuse claim will be granted.

An appropriate order follows.

**BY THE COURT:**

*/s/ Wendy Beetlestone*
_____
**WENDY BEETLESTONE, J.**